THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEONARDO BALTAZAR, Defendant-Appellant.

Third District    No. 3—97—0361

Opinion filed March 11, 1998.

Robert L. Rascia and Timothy R. Roellig (argued), both of Serpico, Novelle & Navigato, Ltd., of Chicago, for appellant.

Ted J. Hamer, State's Attorney, of Cambridge (John X. Breslin and Terry A. Mertel (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOMER delivered the opinion of the court:

The defendant appeals his conviction and 10-year prison sentence for unlawful possession of over 5,000 grams of cannabis (720 ILCS 550/4(g) (West 1996)) and unlawful possession with intent to deliver over 5,000 grams of cannabis (720 ILCS 550/5(g) (West 1996)). We determine that the police search of the defendant's U-Haul truck exceeded the scope of the defendant's consent. Therefore, we reverse.

## FACTS

On the morning of February 28, 1996, the defendant was driving a U-Haul truck on Interstate 80 in Henry County when he was stopped for speeding by Illinois State Police Sergeant James Buysse. The defendant presented Buysse with his driver's license and the truck's rental agreement. Buysse testified that the rental agreement listed the defendant as the renter of the truck. Buysse informed the defendant that he would receive a warning ticket for speeding and asked him to accompany him back to the squad car. The passenger travelling with the defendant, Agipato Almonte, waited in the truck.

While they were sitting in the squad car, Buysse noticed that the defendant appeared to be nervous because he was wringing his hands and repeatedly glancing out the window. The defendant explained that the passenger in the truck was his uncle, who was along to help with the driving. At the suppression hearing, Buysse testified that the defendant could not remember his passenger's name. At trial,

Buysse testified that the defendant identified the passenger by a false name, although he could not remember the name that the defendant gave.

Buysse then approached Almonte, who was still sitting in the cab of the U-Haul. After Almonte produced his identification card, Buysse observed that he spoke very little English. When asked if he was related to the defendant, Almonte shook his head and said "no." However, Buysse did not know whether Almonte understood his questions.

After speaking to Almonte, Buysse returned to his squad car and resumed questioning the defendant. The defendant explained that he was moving to Detroit to begin a new job and that the U-Haul contained his personal belongings. Buysse asked the defendant if he could "take a look" inside the back of the U-Haul. The defendant responded by saying "sure." Buysse did not tell the defendant the reason for his request or what he was looking for.

After suggesting that the defendant remain in the squad car, Buysse approached the truck with two other troopers who had arrived on the scene. Upon opening the rear cargo door, Buysse saw various items, including couches, dressers, a headboard, mattresses, and bicycles. He also noticed a roll of packing tape and thought it unusual because he saw no boxes.

Buysse and one of the other officers entered the cargo hold of the truck and began moving items around. After moving one of the couches. which was lying upside down on another couch, Buysse observed three cardboard boxes. At the suppression hearing, Buysse testified that the boxes were sealed with tape and he had to cut them open. At trial, he testified that the boxes were not taped closed, but the flaps were folded down. Inside the first box Buysse found an object wrapped in duct tape. Upon cutting the object open, he found a green leafy substance that would later field test as cannabis. Further investigation revealed that the boxes contained 188 pounds of cannabis.

On appeal, the defendant raises the following issues: (1) the trial court's denial of his motion to suppress the evidence; (2) the trial court's admission of Buysse's hearsay testimony as to the name written on the rental agreement; (3) the State's failure to prove him guilty beyond a reasonable doubt; and (4) the propriety of his sentence in light of our supreme court's recent decision striking down Public Act 89—428 (Pub. Act 89—428, eff. December 13, 1995), which amended the provisions under which he was sentenced. See *Johnson v. Edgar*, 176 Ill. 2d 499, 680 N.E.2d 1372 (1997).

## ANALYSIS

■ Ordinarily a trial court's ruling on a motion to suppress evidence will not be disturbed on appeal unless it is manifestly erroneous. *People v. James*, 163 Ill. 2d 302, 310, 645 N.E.2d 195, 199 (1994). However, when a determination concerning an individual's constitutional rights depends on a legal conclusion that is based upon undisputed facts, the decision should be reviewed as a matter of law. *People v. Anaya*, 279 Ill. App. 3d 940, 945, 665 N.E.2d 525, 528 (1996); *United States v. Rich*, 992 F.2d 502, 505 (5th Cir. 1993). Because the facts are essentially uncontroverted and the credibility of witnesses is not at issue in the instant case, we will review the trial court's decision *de novo*. See *People v. Foskey*, 136 Ill. 2d 66, 76, 554 N.E.2d 192, 197 (1990).

The defendant contends that the trial court erred in denying his motion to suppress evidence seized during the search of his rented U-Haul truck. He does not raise issue with the voluntariness of his consensual response to Buysse's request to "take a look" inside the back of the U-Haul. Rather, the defendant argues that Buysse's actions exceeded the scope of his consent because he only agreed to permit Buysse to look inside the back of the truck to confirm that it contained the defendant's personal items. He contends that he did not consent to Buysse entering the truck, moving his personal belongings around, and opening boxes or taped objects found in boxes.

The fourth amendment of the United States Constitution and article I, section 6, of the Illinois Constitution protect individuals from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. The fundamental purpose of these provisions is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. See *People v. Dilworth*, 169 Ill. 2d 195, 201, 661 N.E.2d 310, 314 (1996). It is well settled, however, that an individual may consent to a search conducted without a warrant, thereby eliminating the need for probable cause and a search warrant. *People v. Phillips*, 264 Ill. App. 3d 213, 217, 636 N.E.2d 1118, 1121 (1994).

■ When the police rely upon consent as the basis for a warrantless search, they have no more authority than they have apparently been given by the voluntary consent of the defendant. 3 W. LaFave, Search & Seizure § 8.1(c), at 610 (3d ed. 1996). The scope of their authority is not determined based on the subjective intentions of the consenting party nor the subjective interpretation of the searching officer. 3 W. LaFave, Search & Seizure § 8.1(c), at 610 (3d ed. 1996). Rather, the standard for measuring the scope of a suspect's consent is that of "objective reasonableness," which requires consideration of

what a "typical reasonable person [would] have understood by the exchange between the officer and the suspect." *Florida v. Jimeno*, 500 U.S. 248, 251, 114 L. Ed. 2d 297, 302, 111 S. Ct. 1801, 1803-04 (1991).

In most instances, this determination is easily made because courts ordinarily define the scope of a search by the express object or purpose. *Jimeno*, 500 U.S. at 251, 114 L. Ed. 2d at 303, 111 S. Ct. at 1804. By stating the intended object of the search either directly or by revealing a suspicion of specific criminal activity, a police officer not only apprises the suspect that his constitutional rights are being impacted, but he also informs the suspect of the reasonable parameters of his inquiry. For that reason, courts have determined that an officer may search smaller containers found inside the larger area being searched if it would be objectively reasonable to find the stated object of the search in that smaller container. See *Jimeno*, 500 U.S. at 251, 114 L. Ed. 2d at 302-03, 111 S. Ct. at 1804 (defendant's consent to search his car included search of a small paper bag found in the car because he was informed that the officer suspected that he possessed narcotics); *Phillips*, 264 Ill. App. 3d at 222, 636 N.E.2d at 1124 (defendant's consent to search of his motorcycle included search of a jacket located in the rear cargo area when the express object of the search was narcotics); *United States v. Lechuga*, 925 F.2d 1035, 1042 (7th Cir. 1991) (consent to search unfurnished apartment included search of suitcase in closet because the express purpose of the search was drugs); *Rich*, 992 F.2d at 506-07 (defendant's consent to the officer's request to look in his truck included suitcase located behind the passenger seat because the officer had just asked the defendant if he had any narcotics in the truck).

■ The search in the instant case is problematic, however, because the record reveals that Buysse did not express any specific purpose for his request to "take a look" in the back of the U-Haul truck. Further, our research has uncovered no authority directly on point. Therefore, we must consider the totality of the circumstances surrounding the exchange between the defendant and Buysse to determine whether a typical reasonable person would have believed that the scope of the defendant's consent included permission for the officer to search the contents of unopened boxes not in plain view in the cargo hold of the truck and to cut open the sealed objects found inside those boxes.

We acknowledge that it is not necessary for a police officer to specifically use the term "search" to constitute a valid search request under the fourth amendment. *Rich*, 922 F.2d at 506. However, the words used by the officer, when viewed in context, must objectively communicate to a reasonable individual that the officer is requesting

permission to examine the vehicle and its contents. *Rich,* 922 F.2d at 506. After our careful review of the facts in the instant case, we determine that Buysse's actions exceeded the scope of the defendant's consent.

Just prior to making the request to "take a look," Buysse had asked the defendant where he was going and what he had in the back of his truck. The defendant explained that all of his personal belongings were in the cargo hold of the truck because he was moving to Detroit to start a new job. Buysse immediately followed the defendant's explanation with the question: "[C]an I take a look?" We determine that the defendant's affirmative response, "sure," reasonably communicated to Buysse consent only to look into the truck to see if it contained what the defendant claimed it did, his personal belongings. At no time did Buysse inform the defendant that he wanted to search for illegal drugs or other contraband. Therefore, Buysse failed to reasonably communicate to the defendant that he intended to conduct a thorough search of the cargo hold of the defendant's U-Haul. Upon opening the door of the cargo hold and seeing that it contained what the defendant claimed, Buysse, having no probable cause, was obligated to obtain additional consent if he wished to investigate beyond the implied object of the search.

■ The State points out that the squad car in which the defendant was sitting was located only two or three car lengths behind the U-Haul. Therefore, the State contends that because the defendant did not object when the officer entered the truck, moved the contents around, and opened boxes and packages, the defendant's consent was a "general consent." See *United States v. Verduzco,* 996 F.2d 1220 (7th Cir. 1993); *United States v. Pena,* 920 F.2d 1509 (10th Cir. 1990). Consequently, the State argues that the scope of the search was unlimited. We disagree. Although a defendant has the right to place explicit limitations on the scope of his consent (*Jimeno,* 500 U.S. at 252, 114 L. Ed. 2d at 303, 111 S. Ct. at 1804) as well as the right to withdraw it before any incriminating evidence is found (*United States v. Dyer,* 784 F.2d 812, 816 (7th Cir. 1986)), police officers remain constrained by the bounds of reasonableness in conducting their searches. See *United States v. Harris,* 928 F.2d 1113 (11th Cir. 1991). We decline to find that the defendant's failure to exit the squad car and object once Buysse exceeded the scope of his authority served to transform his limited consent to a general consent to search.

■ We hold that an objectively reasonable person would have understood the exchange between Buysse and the defendant to mean simply that the defendant consented to Buysse looking into the back of the truck to confirm that it contained the defendant's furniture

and other personal belongings. Because Buysse's search exceeded the scope of the defendant's consent, we reverse the trial court's ruling denying the defendant's motion to suppress. Further, because the State cannot prevail on remand without the evidence that we have held should have been suppressed, we reverse the defendant's conviction and sentence outright. *People v. Sweborg*, 293 Ill. App. 3d 298, 305, 688 N.E.2d 144, 149 (1997). The remaining issues raised by the defendant are rendered moot by our decision.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Henry County is reversed.

Judgment reversed.

McCUSKEY, P.J., and LYTTON, J., concur.