THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LORI A. JOHNS, Defendant-Appellant.

Fourth District   No. 4—02—0748

Opinion filed August 8, 2003.

298

Richard M. Kash, Jr., of Fruin, Garst & Kash, of Paris, for appellant.

Dennis E. Simonton, State's Attorney, of Marshall (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Following a stipulated bench trial on August 12, 2002, the trial court found defendant, Lori A. Johns, guilty of possession of a controlled substance (less than 15 grams of a substance containing cocaine) (720 ILCS 570/402(c) (West 2000)). The court sentenced her to 24 months' probation. Defendant appeals, arguing that the trial court erred by denying her motion to suppress evidence. We reverse.

On April 30, 2002, defendant filed a motion to suppress evidence. Defendant referenced a judgment order for probation entered on May 14, 2001. The order stated "[d]efendant has been found guilty of the offenses of DRIVING UNDER THE INFLUENCE OF ALCOHOL [(DUI)] and DRIVING WHILE REVOKED [(DWR)], class A misdemeanors." The order provided that defendant shall "[s]ubmit to warrantless searches of [her] person, property, residence, motor vehicle and effects at the request of [her] probation officer or law enforcement authorities and consent to the use of anything seized as evidence in court proceedings." On January 23, 2002, law enforcement authorities conducted "a random probation check" of defendant's residence. Defendant argued that "the search [was] beyond the scope authorized *** [and] there was no reasonable suspicion to conduct a search."

At hearing, the parties stipulated to the testimony offered at the preliminary hearing. On January 23, 2002, Marshall police officer Jeff Sanders conducted "a random probation check" of defendant's residence. Sanders testified that it was not "a direct order" but that the probation office had asked law enforcement authorities to

"randomly check [probationers]." Defendant was not present in the home. Sanders testified that defendant's son "was there and gave us permission to go ahead and come in and conduct a search of the residence as part of her probation." Sanders believed the boy to be 16 or 17 years old. Sanders found three used pipes in a dresser drawer located in defendant's bedroom. The pipes were confiscated and later tested. A single pipe was found to contain less than 15 grams of a substance containing cocaine. As a result, the State charged defendant with possession of a controlled substance.

The trial court ruled that "the search falls squarely within the 'special needs' exception to the usual warrant and probable cause requirements." The court denied defendant's motion to suppress the evidence. On August 12, 2002, the court conducted a stipulated bench trial. The court found defendant guilty of possession of a controlled substance and sentenced her as stated. This appeal followed.

■ Defendant argues the trial court erred in denying her motion to suppress. Specifically, defendant argues "the search was not based upon suspicion or evidence of illegal activity." We accord deference to a trial court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence; however, we review *de novo* the ultimate reasonableness of a warrantless search. *People v. Sorenson*, 196 Ill. 2d 425, 431, 752 N.E.2d 1078, 1083 (2001).

■ Initially, the State argues the trial court did not err "since the police had obtained consent to search from the defendant's son," and "the motion to suppress should be affirmed on this basis alone." Although the State did not make this argument in the trial court, the supreme court has held it "unfair" to find the State has waived an argument not made in the trial court when the trial court denies a defendant's motion to suppress and the defendant appeals. *People v. Janis*, 139 Ill. 2d 300, 319, 565 N.E.2d 633, 642 (1990).

We note the State's sole argument at hearing was in reference to *United States v. Knights*, 534 U.S. 112, 151 L. Ed. 2d 497, 122 S. Ct. 587 (2001). The State "concede[d]" that the Supreme Court "ruled against our position." The State asked that the trial court "rebalance the interests," albeit noting the sole distinction between the cases: "Defendant in the *Knights* case was on probation for a drug offense, and the distinction here, this [d]efendant obviously is on probation for a DUI *** not much of a distinction."

■ ■ "It is *** well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 36 L. Ed. 2d 854, 858, 93 S. Ct. 2041, 2043-44 (1973). This consent may be obtained not only from the

individual whose property is searched, but also from a third party who possesses common authority over the premises. *People v. Bull*, 185 Ill. 2d 179, 197, 705 N.E.2d 824, 833 (1998). Such authority is based on mutual use of the property by persons generally having joint access or control for most purposes. The burden of establishing common authority rests on the government. *Bull*, 185 Ill. 2d at 197, 705 N.E.2d at 833. In the present case, the State failed to establish that defendant's son possessed common authority over a dresser drawer located in his parents' bedroom. We do not accept, without evidence, that a child in his teens could give a valid consent to law enforcement authorities to conduct a search of a dresser drawer located in his parents' bedroom. See 3 W. LaFave, Search & Seizure § 8.4(c), at 773 (3d ed. 1996).

■ We next address the search as a condition of probation and the fourth amendment. The fourth amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV. The fourteenth amendment (U.S. Const., amend. XIV) makes the fourth amendment applicable to the states. *Elkins v. United States*, 364 U.S. 206, 213, 4 L. Ed. 2d 1669, 1675, 80 S. Ct. 1437, 1442 (1960). A search does not run afoul of the fourth amendment if it is "reasonable," which we "measure[ ] in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39, 136 L. Ed. 2d 347, 354, 117 S. Ct. 417, 421 (1996).

> "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' " *Knights*, 534 U.S. at 118-19, 151 L. Ed. 2d at 505, 122 S. Ct. at 591, quoting *Wyoming v. Houghton*, 526 U.S. 295, 300, 143 L. Ed. 2d 408, 414, 119 S. Ct. 1297, 1300 (1999).

Here, the State offered no evidence to establish the reasonableness of the search, relying only on the fact that defendant was an individual subject to a probation order.

■ "A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.' " *Griffin v. Wisconsin*, 483 U.S. 868, 873, 97 L. Ed. 2d 709, 717, 107 S. Ct. 3164, 3168 (1987). Although probationers are subject to specific constraints on their privacy that would not be constitutional if applied to the public at large, their privacy interests are not eliminated entirely. *Griffin*, 483 U.S. at 874, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169.

In *Knights*, the facts concerned a search of the home of a probationer subject to a probation search condition. In examining the totality of the circumstances, the Supreme Court found the probationer's privacy interest to be "significantly diminished" (*Knights*, 534 U.S. at 121, 151 L. Ed. 2d at 506-07, 122 S. Ct. at 593), but not extinguished. Similarly, we find defendant had a diminished, but not extinguished, expectation of privacy in her home.

Although the fourth amendment ordinarily requires the degree of probability embodied in the term "probable cause," a lesser degree satisfies the constitution when the balance of governmental and private interests makes such a standard reasonable. *Knights*, 534 U.S. at 121, 151 L. Ed. 2d at 506, 122 S. Ct. at 592. "The degree of individualized suspicion required of a search is a determination of when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable." *Knights*, 534 U.S. at 121, 151 L. Ed. 2d at 506, 122 S. Ct. at 592. In *Knights*, the district court found, and Knights conceded, that the search was supported by reasonable suspicion. The Supreme Court held the warrantless search of Knights, supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the fourth amendment. *Knights*, 534 U.S. at 121, 151 L. Ed. 2d at 507, 122 S. Ct. at 593. In the present case, law enforcement authorities did not assert a search supported by "reasonable suspicion" but only a search authorized by a condition of probation.

*Knights* did not decide whether the probation condition so diminished, or completely eliminated, Knights' reasonable expectation of privacy that a search by law enforcement authorities without any individualized suspicion would have satisfied the reasonableness requirement of the fourth amendment. "The terms of the probation condition permit such a search, but we need not address the constitutionality of a suspicionless search because the search in this case was supported by reasonable suspicion." *Knights*, 534 U.S. at 121 n.6, 151 L. Ed. 2d at 505 n.6, 122 S. Ct. at 592 n.6; but see *United States v. Crawford*, 323 F.3d 700, 722 (9th Cir. 2003) ("Because law enforcement officials conducted a search of Crawford's home without reasonable suspicion to believe that they would uncover evidence of criminal activity, we hold that the search violated the Fourth Amendment. The fact that Crawford signed a blanket 'Fourth Waiver' as a mandatory condition of his parole does not serve to waive the minimum constitutional protection of reasonable suspicion to which he and other parolees are entitled").

It is implicit in the Court's statements in *Knights* and *Griffin* that

probation searches are limited by some reasonable and legally protectible privacy interest. See *Knights*, 534 U.S. at 121, 151 L. Ed. 2d at 506-07, 122 S. Ct. at 593 ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable"); *Griffin*, 483 U.S. at 875, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169 ("Supervision *** is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large. That permissible degree is not unlimited, however ***").

By mandating that we balance the government's interests against the privacy interests of a probationer, and by declaring the individual's privacy interests to be diminished, but not extinguished, the Supreme Court has made it clear that in the case of searches pursuant to probation conditions, the ordinary search requirements are to be relaxed but not eliminated.

Moreover, the fact that a probation search invades the home must weigh heavily in the "totality of the circumstances" that determines whether such a search is reasonable. See *Knights*, 534 U.S. at 118, 151 L. Ed. 2d at 504-05, 122 S. Ct. at 591. The Supreme Court considers the home sacrosanct and permits government searches of the home only pursuant to enhanced procedural safeguards. See *Kyllo v. United States*, 533 U.S. 27, 34, 150 L. Ed. 2d 94, 102, 121 S. Ct. 2038, 2043 (2001) (The home is the "prototypical *** area of protected privacy").

The Supreme Court's "special needs" jurisprudence does not support a different conclusion. The trial court correctly characterized probation as a "special need" of the state, but incorrectly concluded that upon invocation of that phrase, fourth amendment protections vanish. *Griffin* itself stated otherwise. The Court found that "special needs" associated with the probation system may justify departures from the usual warrant and probable cause requirements but unmistakably held that the permissible impingement on a probationer's privacy is not unlimited. *Griffin*, 483 U.S. at 875, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169. Certainly, nothing in *Griffin* purports to authorize substantial invasions of a probationer's privacy without any suspicion of individual wrongdoing whatsoever.

In a few exceptional "special needs" cases, searches not founded on any degree of individualized suspicion have been approved, but these searches have not involved the home. See *Board of Education of Independent School District No. 92 v. Earls*, 536 U.S. 822, 153 L. Ed. 2d 735, 122 S. Ct. 2559 (2002) (drug tests for extracurriculars at school); *Vernonia School District 47J v. Acton*, 515 U.S. 646, 132 L. Ed.

2d 564, 115 S. Ct. 2386 (1995) (drug tests of athletes at school); *Michigan Department of State Police v. Sitz*, 496 U.S. 444, 110 L. Ed. 2d 412, 110 S. Ct. 2481 (1990) (highway sobriety checkpoints); *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 103 L. Ed. 2d 639, 109 S. Ct. 1402 (1989) (railroad employees' drug tests at work); *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 103 L. Ed. 2d 685, 109 S. Ct. 1384 (1989) (customs employees' drug tests at work); *New York v. Burger*, 482 U.S. 691, 96 L. Ed. 2d 601, 107 S. Ct. 2636 (1987) (purely administrative search of regulated business).

■ Unlike in every suspicionless search approved above, law enforcement authorities entered an individual's home. We have considered the totality of the circumstances, balancing the degree to which the search intruded upon defendant's privacy and the degree to which the intrusion is needed for the promotion of legitimate governmental interests. Based upon the unique facts and circumstances of this case, and given the holdings in *Knights* and *Griffin*, we find that some reasonable suspicion was required to justify the search of the dresser drawer in defendant's bedroom.

For the reasons stated, we reverse the trial court's judgment.

Reversed.

JUSTICE TURNER, specially concurring:

I agree with the majority opinion that the home of a probationer is entitled to the protection of the fourth amendment and its reasonableness requirement for a valid search, albeit to a lesser extent than that of the general public. See *Knights*, 534 U.S. at 119, 151 L. Ed. 2d at 505, 122 S. Ct. at 591 (" 'Probation, like incarceration is "a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty." ' [Citations.] *** Inherent in the very nature of probation is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled." ' [Citations.] *** [A] court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens"). Here, the majority reaches the correct result by reversing the trial court's denial of the motion to suppress evidence found in defendant's dresser drawer in defendant's private bedroom. Nonetheless, I write separately to address the parameters of the specific language of the probation condition at issue in this case, as well as to note my exception to comments made in the dissent.

As noted in the majority opinion, defendant's probation order required her to " '[s]ubmit to warrantless searches of [her] person, property, residence, motor vehicle and effects at the request of [her]

probation officer or law enforcement authorities.' " 342 Ill. App. 3d at 298. Thus, the probation order purports to constitute defendant's waiver of her fourth amendment rights and is in essence treated as a consent to search, although it is certainly different than a traditional consensual search, where consent is often obtained by a police officer from a person suspected of criminal behavior. In the case at hand, the consent embodied in the probation order is given only at the outset of probation, purportedly to allow for any number of searches in any number of places and without any restrictions.

As recently noted by the Illinois Supreme Court, "[t]he standard for measuring the scope of a suspect's consent is that of ' "objective" reasonableness,' which requires consideration of what a 'typical reasonable person [would] have understood by the exchange between the officer and the suspect.' " *People v. Ledesma*, 206 Ill. 2d 571, 593 (2003), quoting *Florida v. Jimeno*, 500 U.S. 248, 251, 114 L. Ed. 2d 297, 302, 111 S. Ct. 1801, 1803-04 (1991). The supreme court further stated that "[i]n most instances, this determination is easily made because courts ordinarily define the scope of a search by its express object or purpose." *Ledesma*, 206 Ill. 2d at 593, citing *Jimeno*, 500 U.S. at 251, 114 L. Ed. 2d at 303, 111 S. Ct. at 1804. "By indicating to the suspect the intended object of the search either directly or by revealing a suspicion of specific criminal activity, a police officer not only 'apprises the suspect that his constitutional rights are being impacted, but he also informs the suspect of the reasonable parameters of his inquiry.' " *Ledesma*, 206 Ill. 2d at 593, quoting *People v. Baltazar*, 295 Ill. App. 3d 146, 150, 691 N.E.2d 1186, 1189 (1998).

In my view, it is inconceivable, as the dissent seems to suggest, that a typical reasonable person would understand the consent here to be so sweeping as to authorize probation or law enforcement officers to conduct searches at any time, under any circumstances, and by any means, without probable cause or even reasonable suspicion of criminal activity or a probation violation. While I do not agree the consent is without limitation, I do agree it significantly diminishes the probationer's rights. For example, I believe it is objectively reasonable that the language "shall submit" to searches "at the request" of probation or law enforcement authorities advises a probationer that it is quite conceivable probation or law enforcement officers may show up at the probationer's door, unannounced and with no prior notice, advise the probationer they are there to conduct a search pursuant to the terms of the probation order, and immediately conduct the search even though the officers had no reasonable suspicion of criminal activity or a probation violation. I do agree with the dissent that "at the request of your probation officer" means "at the direction" of the

probation officer and does not mandate that consent of the probationer is required. (Emphasis omitted.) 342 Ill. App. 3d at 310.

The Fifth District has found almost identical language in a condition of probation to be a reasonable response to the "special needs" of the Illinois probation system. *People v. Eiland*, 217 Ill. App. 3d 250, 257, 576 N.E.2d 1185, 1191 (1991). However, the court went on to hold that a "probationer's waiver of fourth amendment rights extends only to searches conducted upon a reasonableness standard, as any probation condition imposed must be 'reasonable' under the language of section 5—6—3(b) [of the Unified Code of Corrections]. Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—3(b)." *Eiland*, 217 Ill. App. 3d at 258, 576 N.E.2d at 1191. In *Eiland*, probation officers searched the defendant's apartment and automobile. Prior to doing so, the probation officers informed the defendant they were there to conduct a search pursuant to a condition of his intensive probation, and the defendant did not deny them permission to search. *Eiland*, 217 Ill. App. 3d at 255, 576 N.E.2d at 1189. At the time of the search, the probation officers possessed information previously provided by a law enforcement official that the defendant was committing a criminal offense, and the probation officers were aware that two of the defendant's prior urinalysis tests were positive for cannabis and cocaine. *Eiland*, 217 Ill. App. 3d at 258-59, 576 N.E.2d at 1191. Thus, the search was deemed justifiable and reasonable. *Eiland*, 217 Ill. App. 3d at 259, 576 N.E.2d at 1191-92.

Here, defendant was on probation for DUI and DWR. A police officer went to defendant's residence to conduct a random probation check. The police officer had no reasonable suspicion that defendant had committed a probation violation or was otherwise engaged in criminal activity. Moreover, unlike in *Eiland*, defendant was not present to be directed or advised that her residence and personal effects were subject to an immediate search pursuant to her probation condition. In my view, her absence is a significant factor in weighing the reasonableness of the search because I find the language of the probation order at issue implied that defendant had an expectation of being present during the search of her home and personal effects. In so stating, I note that in the proper circumstances, the probationer's expectation of being present may be outweighed by other factors under a reasonableness standard. Under the totality of the circumstances here, however, the search of defendant's dresser drawer was not reasonable.

The dissent likens my interpretation of the probation condition to a requirement to give a probationer prior notice, which may allow the probationer to "refuse to answer the door, escape, or dispose of the

evidence of drug use." 342 Ill. App. 3d at 310. But such actions would offer ample grounds for a petition to revoke the defendant's probation. Moreover, the conduct would certainly constitute reasonable suspicion of a probation violation and thus be grounds for an immediate search under the authority of *Knights*.

The dissent seems in favor of giving probation officers or law enforcement authorities the keys to a probationer's residence, or removing the front door altogether, to come and go as they please. Yes, the State's "interest in apprehending violators of the criminal law *** may therefore justifiably focus on probationers in a way that it does not on the ordinary citizen." *Knights*, 534 U.S. at 121, 151 L. Ed. 2d at 506, 122 S. Ct. at 592. But, " 'the house of every one is to him as his castle and fortress, as well for his defence against injury and violence, as for his repose.' " *Wilson v. Layne*, 526 U.S. 603, 609-10, 143 L. Ed. 2d 818, 827, 119 S. Ct. 1692, 1697 (1999), quoting *Semayne's Case*, 5 Co. Rep. 91a, 91b, 77 Eng. Rep. 194, 195 (K.B. 1604). "[P]hysical entry of the home is the chief evil against which the wording of the [f]ourth [a]mendment is directed ***." *United States v. United States District Court for the Eastern District of Michigan*, 407 U.S. 297, 313, 32 L. Ed. 2d 752, 764, 92 S. Ct. 2125, 2134 (1972).

Recognizing the fourth amendment jurisprudence, I further note that even a search warrant requires officers to "knock and announce" their presence unless exigent circumstances exist. See *People v. Krueger*, 175 Ill. 2d 60, 66, 675 N.E.2d 604, 608 (1996), citing *Wilson v. Arkansas*, 514 U.S. 927, 930, 131 L. Ed. 2d 976, 981, 115 S. Ct. 1914, 1917 (1995) (the basic principle behind the fourth amendment's reasonableness requirement "is that an officer may not enter a dwelling, even pursuant to a valid warrant, without first requesting admittance and announcing the reason why the officer is there"). Further, a search warrant is limited in scope to a specific place and to specific items. While probationers may be subject to a lesser expectation of privacy than the general public, the protections of the fourth amendment are not completely extinguished. Instead, as earlier stated, "a probationer's waiver of fourth amendment rights extends only to searches conducted upon a reasonableness standard." *Eiland*, 217 Ill. App. 3d at 258, 576 N.E.2d at 1191.

In the case *sub judice*, law enforcement authorities were fully justified in making an unannounced visit to defendant's residence to conduct a search pursuant to the probation order, even though they possessed no reasonable suspicion of criminal activity or a probation violation. Although defendant was not at home when they arrived, officers fortuitously obtained consent from defendant's son to peacefully enter the residence and conduct a search. As noted in the majority

opinion, however, the consent from defendant's son extended only to those areas over which he possessed common authority with defendant. And here, "the State failed to establish that defendant's son possessed common authority over a dresser drawer located in his parents' bedroom." 342 Ill. App. 3d at 300.

The dissent complains that "[t]his majority will render probation officers ineffectual and useless." 342 Ill. App. 3d at 310. However, the majority opinion limits its holding to the unique facts and circumstances of this case. Nonetheless, the dissent predicts that "[w]ith no ability to conduct surprise searches, courts will be loath to sentence defendants to probation given the potential danger to the public, and the consequential cost to our legal system will be astronomical." 342 Ill. App. 3d at 310. I find this dire prediction unfounded because I reject its underlying premise that probation officers will be disabled from conducting surprise searches.

For the reasons stated, I specially concur in reversing the trial court's judgment.

PRESIDING JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent and would affirm the trial court. *Eiland* clearly found a search pursuant to the probationer's fourth amendment waiver is a justified departure from the usual warrant and probable cause requirements.

"Additionally, a search conducted pursuant to a valid consent does not violate the fourth amendment. (*Washington v. Chrisman* (1982), 455 U.S. 1, 9-10, 70 L. Ed. 2d 778, 787, 102 S. Ct. 812, 818; see also *People v. Kelley* (1979), 76 Ill. App. 3d 80, 86, 394 N.E.2d 739, 744.) While defendant acknowledges that he signed a form consenting to warrantless searches in order to obtain probation, defendant argues that under such 'coercive' circumstances, his consent was not voluntary. However, a probationer's waiver of his fourth amendment rights is no less voluntary than the waiver of rights by a defendant who pleads guilty to gain the benefits of a plea bargain. See *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 360-64, 54 L. Ed. 2d 604, 609-11, 98 S. Ct. 663, 666-68; *People v. Bravo* (1987), 43 Cal. 3d 600, 738 P.2d 336, 238 Cal. Rptr. 282, *cert. denied* (1988), 485 U.S. 904, 99 L. Ed. 2d 234, 108 S. Ct. 1074." *Eiland*, 217 Ill. App. 3d at 258, 576 N.E.2d at 1191.

This waiver is no less onerous than the waiver that requires defendant to refrain from possessing firearms, to forfeit good-time credits, and to submit to drug and alcohol screening. No reasonable suspicion is required prior to testing. Paragraphs 4, 15, and 18 state the probationer shall:

"Refrain from possessing a firearm or other dangerous weapon.

If the defendant has a firearm owner's identification card and this order is entered for a felony offense, the card shall be surrendered to the probation office as required by 430 ILCS 65/8.

\* \* \*

Serve 7 days in the Clark County Jail with credit for 0 days served. Defendant is not eligible for good[-]behavior credits. Defendant shall not consume any alcoholic beverage, cannabis or controlled substances (without valid prescription) within 24 hours prior to reporting to the jail. Further, upon request defendant shall submit specimen of breath, blood[,] and urine for testing at prisoner's expense.

\* \* \*

Refrain from having in your body the presence of any drugs prohibited by law. Whenever directed by a law enforcement officer or probation officer[,] you shall submit samples of blood, breath[,] and urine to be tested, at defendant's expense, for the presence of alcohol and drugs."

These provisions have never been considered unconstitutional. Further, probation orders containing a still harsher banishment provision have been upheld. See *In re J.W.*, 204 Ill. 2d 50, 80, 787 N.E.2d 747, 764-65 (2003). The court stated:

"Although the banishment condition of probation is not expressly provided for by statute, it may, nonetheless, be a constitutionally valid condition of probation. It has been recognized that courts have broad discretion to impose probation conditions, whether expressly allowed by statute or not, to achieve the goals of fostering rehabilitation and protecting the public. See *People v. Meyer*, 176 Ill. 2d 372, 378[, 680 N.E.2d 315, 318] (1997); *People v. Harris*, 238 Ill. App. 3d 575, 581[, 606 N.E.2d 392, 396] (1992)." *J.W.*, 204 Ill. 2d at 77, 787 N.E.2d at 763.

The waiver here is clearly reasonable. "[W]hen deciding the propriety of a condition of probation imposed in a particular case, whether explicitly statutory or not, the overriding concern is reasonableness. [Citations.] To be reasonable, a condition of probation must not be overly broad when viewed in the light of the desired goal or the means to that end." *J.W.*, 204 Ill. 2d at 78, 787 N.E.2d at 763-64. Moreover:

"When assessing the reasonableness of a condition of probation it is appropriate to consider whether the restriction is related to the nature of the offense or the rehabilitation of the probationer. [Citations.] Other considerations are: (1) whether the condition of probation reasonably relates to the rehabilitative purpose of the legislation, (2) whether the value to the public in imposing this

condition of probation manifestly outweighs the impairment to the probationer's constitutional rights, and (3) whether there are any alternative means that are less subversive to the probationer's constitutional rights, but still comport with the purposes of conferring the benefit of probation." *J.W.*, 204 Ill. 2d at 79, 787 N.E.2d at 764.

Here the condition of probation, "warrantless searches," relates to rehabilitation (keeping the substance abuser clean); has value to the public (keeping the substance abuser clean and not driving); and there are no alternative means to conduct surprise probation checks.

Further, " '[p]robation is not a right, but a privilege.' [Citations.] If defendant had refused to agree to abide by the conditions of probation, the court would have had a basis to deny probation on the ground that the defendant was unwilling to accept and abide by its proposed terms. [Citation.]" *Eiland*, 217 Ill. App. 3d at 258, 576 N.E.2d at 1191.

The court went on to say:

"We therefore see no reason for denying a defendant the right to waive his fourth amendment rights in order to accept the benefits of probation. However, unlike the California court, which held that a search condition of probation that permits a search without a warrant also permits a search without reasonable cause (*Bravo*, 43 Cal. 3d at 611, 738 P.2d at 342-43, 238 Cal. Rptr. at 289), we believe a probationer's waiver of fourth amendment rights extends only to searches conducted upon a reasonableness standard, as any probation condition imposed must be 'reasonable' under the language of section 5—6—3(b). Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—3(b).

In the instant case, defendant had agreed to allow a search pursuant to what we have determined to be a reasonable condition of his intensive probation." *Eiland*, 217 Ill. App. 3d at 258, 576 N.E.2d at 1191.

While the *Eiland* court did not require the search to be independently reasonable, the court stated in *dicta* that the probation officers possessed additional information, which itself made this search reasonable without the waiver.

"As in *Griffin*, the probation officers had information from a police officer, Captain Terry Delaney, that defendant was committing a criminal offense and were entitled to rely upon that information. [Citation.] Additionally, the probation officers knew that two of defendant's urinalysis tests were positive for cocaine and cannabis. The search itself was therefore reasonable in that the information the probation officers possessed indicated the likelihood of facts justifying the search. Thus, given defendant's consent and the additional facts known to the probation officers, the justification for the instant search was even greater than in *Griffin*." *Eiland*, 217 Ill. App. 3d at 258-59, 576 N.E.2d at 1191-92.

Further, I disagree with the special concurrence that probation or law enforcement must request that defendant consent to search his home or that defendant must be present at the time of the search. Either probation or law enforcement may conduct the search. Here, probation requested law enforcement to search defendant's home. Law enforcement is armed and better equipped to conduct these searches.

Moreover, the language "[s]ubmit to warrantless searches *** at the request of probation" means at the *direction of probation*. To require consent is ludicrous. To hold otherwise, the order would have to state "submit to *consensual* searches." A warrantless search means without a warrant and without consent. Nothing requires notice of the search be given to defendant. That is the purpose of the waiver—so probation can conduct a surprise search to make sure defendant is not violating the law or terms of her probation. Notice would simply allow defendant to refuse to answer the door, escape, or dispose of the evidence of drug use. This majority will render probation officers ineffectual and useless. With no ability to conduct surprise searches, courts will be loath to sentence defendants to probation given the potential danger to the public, and the consequential cost to our legal system will be astronomical. For these reasons, I would affirm the trial court.