# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Miranda*, 2012 IL App (2d) 100769

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. HEDILBERTO MIRANDA, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-10-0769 |
| Filed | January 19, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for aggravated driving under the influence of alcohol and felony driving with a suspended license, the appellate court upheld the trial court's order suppressing the results of a test of defendant's urine for drugs performed on a sample obtained pursuant to a search warrant that was issued after defendant refused a urine test, since defendant revoked his implied consent when he refused to submit to the test, the warrant did not satisfy the fourth amendment or the good-faith exception to the exclusionary rule where the affidavit prepared to secure the warrant did not provide probable cause to believe defendant had consumed any drugs, and the police had no right to obtain tests for anything other than alcohol. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 09-CF-3168; the Hon. Blanche Hill Fawell, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, and Lawrence M. Bauer and Kristin M. Schwind, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Thomas A. Lilien and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellee.

Panel

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.

Justices McLaren and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1    The State appeals an order suppressing evidence seized under a search warrant that was issued after defendant, Hedilberto Miranda, was arrested for driving under the influence of alcohol (DUI). The State contends that (1) the trial court erred in holding that the affidavit for the warrant did not provide the probable cause needed to test defendant's urine for drugs; and (2) even absent probable cause, the evidence is admissible under the good-faith doctrine (see *United States v. Leon*, 468 U.S. 897 (1984)). We affirm.

¶ 2    Defendant was indicted for aggravated DUI (625 ILCS 5/11-501(d)(1)(A) (West 2008)) and felony driving with a suspended license (625 ILCS 5/6-303(d-3) (West 2008)). On February 23, 2010, he was indicted for (1) driving while his urine contained any amount of a drug, substance, or compound resulting from the unlawful use of cannabis (625 ILCS 5/11-501(a)(6) (West 2008)) and (2) driving while his urine contained any amount of a drug, substance, or compound resulting from the unlawful use of cocaine (625 ILCS 5/11-501(a)(6) (West 2008)). Later, he filed his motion to suppress, which alleged as follows. On December 23, 2009, at about 5:05 p.m., a search warrant was issued, authorizing the taking of two vials of blood, to be analyzed for the presence of alcohol, and a urine specimen, to be tested for the presence of controlled substances. Per the warrant, hospital employees took the samples from defendant against defendant's wishes. The warrant was invalid as it related to the urine specimen, because the affidavit used to secure the warrant did not provide probable cause to believe that defendant had consumed any drugs. Defendant requested that the trial court suppress any results of the test of his urine for the presence of drugs.

¶ 3    The affidavit, prepared by Elmhurst police officer Michael McLean and dated December 23, 2009, stated as follows. McLean had been a police officer for approximately 10 years. He had investigated hundreds of suspected DUIs and been trained in administering field tests for possible DUI. On December 23, 2009, at about 1:11 a.m., McLean was on patrol when

-2-

he saw a gray Lexus sedan directly in front of him, traveling north on York Road. The Lexus drifted from the right lane well into the left lane, drifted back well into the right lane about 30 seconds later, continued north, and drifted back into the left lane for about 20 yards before returning to the right lane. The Lexus then stopped about 20 feet short of the stop line at the intersection of York and Grand Avenue and turned right onto Grand without stopping at the intersection line. To stop the Lexus, McLean pulled behind it and activated his squad car's emergency lights. The Lexus rolled forth about 100 yards before stopping. Inside were defendant, who was driving, and Hector Soto, a front-seat passenger.

¶ 4    McLean's affidavit continued as follows. McLean exited his squad car and approached the passenger's side. Soto was holding two open Heineken bottles that contained an amber liquid. McLean asked defendant for his driver's license. Defendant produced a state identification card. He told McLean that he and Soto had been drinking at Heavenly Bodies. Defendant's eyes were glassy and bloodshot and his face was red. McLean smelled a strong odor of alcohol from inside the car. He asked the men how much they had drunk that night; defendant responded that he had had a beer or two. McLean called another officer to the scene, then had defendant step outside for field sobriety tests. Defendant had to be directed not to walk in the open traffic lane, and he swayed back and forth; McLean detected a strong odor of alcohol on his breath. Defendant took three field sobriety tests and failed them all. Based on his observations of defendant, the results of the tests, and his experience and training, McLean "believe[d] that [defendant] was under the influence of alcohol, and not fit to operate a motor vehicle." He advised defendant that he was under arrest for DUI, and he transported defendant to the police station.

¶ 5    The final substantive paragraph of McLean's affidavit stated:

"In reviewing Hedilberto Miranda's driver's abstract, his records indicate that he has had court supervision for DUI in 2000, a conviction for DUI in 2007, and a statutory summary suspension in effect on his drivers [*sic*] license since 02/24/99. Miranda's license is currently revoked for a DUI conviction. It is in [*sic*] this complainant's professional opinion that Hedilberto Miranda is under the influence of alcohol and/or drugs, and that a blood and urine specimen will result in evidence of this fact. I am requesting an order directing Elmhurst Hospital to use a DUI blood and urine kit to withdraw a blood and urine specimen, for [the] purpose of analysis for [the] presence of alcohol or drugs."

¶ 6    On December 23, 2009, a judge issued a warrant authorizing the collection from defendant of "two vials of blood samples and a urine specimen collected at Elmhurst Hospital for the purpose of analyzing for the presence of alcohol, drugs, or controlled substance [*sic*], by either a physician authorized to practice medicine, or a registered nurse or other qualified person."

¶ 7    The trial court initially denied defendant's motion to suppress. He moved to reconsider. At a brief hearing, Cynthia Woods, a forensic scientist at a state police laboratory, testified that she had tested defendant's blood and urine samples. The blood sample had been tested for alcohol, but not drugs. The urine specimen had been tested for cocaine and cannabinoids, but not alcohol.

¶ 8 The trial court granted defendant's motion to reconsider. The trial court explained that McLean's affidavit said "nothing at all" about controlled substances. Thus, the police had no right to obtain tests for anything other than alcohol. The State moved to reconsider, contending that, even if the warrant did not provide probable cause to test for controlled substances, the police could have relied on it in good faith. The court denied the motion, and the State appealed.

¶ 9 On appeal, the State again contends both that McLean's affidavit provided the probable cause needed for the issuance of the warrant and that, even absent probable cause, the police reasonably and in good faith relied on it in obtaining the urine sample that provided evidence that defendant had consumed controlled substances. We address these contentions in turn.

¶ 10 The compelled extraction of a person's blood or urine to obtain evidence of alcohol or drug consumption is a search under the fourth amendment. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 617 (1989). A search warrant must be supported by probable cause. U.S. Const., amend. IV. In reviewing the sufficiency of an affidavit for a search warrant, we do not substitute our judgment for that of the magistrate but decide only whether the magistrate had a substantial basis to conclude that probable cause existed. *Massachusetts v. Upton*, 466 U.S. 727, 732-33 (1984) (*per curiam*); *People v. Sutherland*, 223 Ill. 2d 187, 219 (2006).

¶ 11 Although this test is highly deferential, we must conclude that McLean's affidavit did not provide a substantial basis to find probable cause that testing defendant's urine would reveal the presence of any controlled substance.[1] McLean's affidavit said next to nothing about controlled substances, and what scant mention it did make was unsupported by facts. McLean referred to finding physical evidence of alcohol consumption (the open Heineken bottles), but not to finding any physical evidence of drug use. He stated that he smelled *alcohol* on defendant's breath, observed standard indicia of *alcohol* intoxication, learned from defendant that he had consumed *alcohol*, and administered field *sobriety* tests that defendant failed. As a result of all of the foregoing, McLean "believed that [defendant] was under the influence of *alcohol*" (emphasis added) and arrested him for *DUI*. Conspicuously absent from McLean's detailed factual recitation was any reference to controlled substances or any evidence that defendant had used them. McLean did not state that any of these facts made him suspect that defendant had used controlled substances.

¶ 12 The affidavit's sole reference to controlled substances came in the final substantive paragraph, in which McLean gave his "professional opinion that [defendant was] under the influence of alcohol and/or drugs." Not only was this a bare conclusion, but the use of the phrase "and/or" left some ambiguity about whether McLean suspected that defendant had

---

[1]There is, of course, no dispute that the affidavit provided probable cause to believe that a test of defendant's blood would show alcohol at a level probative of intoxication. However, as Woods testified, the blood test was for alcohol only and the urine test was for controlled substances only. Thus, the two searches are distinct for purposes of fourth amendment review.

used drugs at all.[2] Thus, we hold that the affidavit did not establish a sufficient basis on which to find the probable cause needed to test defendant's urine for the presence of controlled substances.

¶ 13 We hold second that the police could not rely in good faith on the warrant to obtain the urine test. Whether the good-faith doctrine applies is a question of law that we decide *de novo*. *People v. Turnage*, 162 Ill. 2d 299, 305 (1994). Reliance on a warrant is not proper if the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Leon*, 468 U.S. at 923. Reliance on McLean's affidavit to obtain drug testing was entirely unreasonable. The affidavit did not merely fall short of establishing probable cause to believe that defendant had recently used drugs; it provided *no* facts to make that belief more than pure speculation. The deficiency was not technical; it was total. Thus, the good-faith doctrine is of no avail to the State.

¶ 14 In seeking reversal, the State relies primarily on *People v. Kirk*, 291 Ill. App. 3d 610 (1997). However, *Kirk* is distinguishable, as it does not address the probable cause needed to secure a valid warrant but instead relies on the rule that a valid consent to a search dispenses with the need for either a warrant or probable cause–a rule that does not apply here.

¶ 15 In *Kirk*, police officers arrived at the scene of a one-car accident and learned that the defendant, who was on the scene, had driven the car. The defendant displayed various indicia of alcohol intoxication, and he was taken to a hospital for treatment. *Id.* at 611-12. There, a police officer cited him for DUI and asked him to take both a blood test and a urine test. The officer did not see anything to suggest that the defendant was under the influence of drugs. The defendant consented to both tests. *Id.* at 615. The blood sample was tested for alcohol only, and the urine sample was tested for drugs only. *Id.* at 617. The urine sample tested positive for cannabis. Later, the defendant moved to suppress the results of both tests. The trial court ruled that the blood test result was admissible because there had been probable cause to believe that the defendant had committed DUI. However, it suppressed the result of the urine test because there had been no probable cause to believe that the defendant had used drugs. *Id.* at 613-14.

¶ 16 The appellate court reversed, holding that the trial court erred in assuming that the administration of the urine test required independent probable cause to believe that the defendant had used drugs. *Id.* at 614-15. The court relied on the implied consent statute, which, as pertinent, read:

"Any person who drives *** shall be deemed to have given consent *** to a chemical test or tests of blood, breath, or urine for the purpose of determining the content of alcohol, other drug, or combination of both in the person's blood if arrested, as evidenced by the issuance of a Uniform Traffic Ticket, for any offense as defined in Section 11-501 or a similar provision of a local ordinance." 625 ILCS 5/11-501.1(a) (West 1994).

¶ 17 The court explained that this language plainly means that an officer who has probable cause to arrest a person for DUI, and does so, may request any of the tests listed in the

_____

[2]See Bryan A. Garner, A Dictionary of Modern Legal Usage 56 (2d ed. 1995) (use of clumsy and ambiguous term "and/or" has been "vilified for most of its life–and rightly so").

statute, including a urine test for drugs. Thus, under the implied consent statute, "individualized suspicion of drugs" is not necessary to administer a urine test for drugs. *Kirk*, 291 Ill. App. 3d at 615. Because the defendant had been validly arrested for DUI, the officer properly requested both tests, to which the defendant consented. Therefore, the result of the urine test was admissible. *Id.*

¶ 18   *Kirk* did not raise any fourth amendment issues at all, much less the validity of a search warrant authorizing the testing of a defendant against his wishes. There is an obvious reason for this: the operation of the implied consent statute eliminated any need for the police to obtain a warrant or to have probable cause to believe that the defendant had used drugs. Under the statute, the defendant had already given his implied consent to have his urine tested for drugs any time that he drove a motor vehicle and was validly arrested for DUI. The defendant never revoked his consent; when asked to take the test, he agreed. Therefore, it was not necessary for *Kirk* to discuss any fourth amendment issues, and any fourth amendment challenge to the urine test would have been futile.

¶ 19   It is axiomatic that valid consent to a search is an exception to the "requirements of both a warrant and probable cause." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *People v. Johns*, 342 Ill. App. 3d 297, 299 (2003). The urine test in *Kirk* was proper because, although lacking a warrant or probable cause, the police had the defendant's consent. See *State v. Smith*, 134 S.W.3d 35, 39 (Mo. Ct. App. 2003) (implied consent statute allows police to obtain blood sample without warrant or express consent).

¶ 20   Implied consent, however, may be revoked, as when the driver refuses to consent to a test. *Brown v. State*, 774 N.E.2d 1001, 1006 (Ind. Ct. App. 2002) (driver may revoke implied consent by refusing to submit to test); *State v. Humphreys*, 70 S.W.3d 752, 762 (Tenn. Crim. App. 2001) (holding that test was proper under implied consent statute, and specifically noting lack of evidence that defendant had refused to take test); *State v. Riedel*, 656 N.W.2d 789, 793 (Wis. Ct. App. 2002) (defendant revoked his implied consent by refusing to take test). When a motorist revokes an implied consent to testing, the police must find a valid basis for the search other than consent. See *Brown*, 774 N.E.2d at 1006-07. One basis, of course, is a search warrant. *Id.* at 1007. However, lacking the motorist's implied consent to a particular chemical test, the officers applying for the warrant must satisfy the fourth amendment's requirement of probable cause.

¶ 21   Here, the State does not dispute that defendant refused the urine test (as he alleged in his motion to suppress and as the facts unmistakably imply). Because defendant revoked his implied consent to the urine test, the police had to find an alternative to the implied consent statute to support the fourth amendment intrusion. The basis they chose was the warrant, but the warrant failed to satisfy the fourth amendment or the good-faith exception to the exclusionary rule. Therefore, suppression of the result of the urine test was required. We affirm the interlocutory order of the circuit court of Du Page County.

¶ 22   Affirmed.