# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Davis*, 2012 IL App (2d) 110581

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. APRYLA DAVIS, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-0581 |
| Filed | June 27, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Substantial compliance with the regulations regarding the taking of urine samples in relation to a statutory suspension of one's driver's license for driving under the influence of cannabis was sufficient where there was no female officer available to take the sample from a female driver, and service of the notice of summary suspension was sufficient with the officer's mailing of the notice to the address shown on the traffic ticket, notwithstanding the fact that the notice was returned as undeliverable. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 10-DT-4336; the Hon. Cary B. Pierce, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Stephen J. Klein, of Ramsell & Associates, LLC, of Wheaton, for appellant.

Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, and Lawrence M. Bauer and Victoria E. Jozef, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.

Justices Zenoff and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1        On November 12, 2010, the State charged defendant, Apryla Davis, by citation with driving under the influence (DUI) (625 ILCS 5/11-501(a) (West 2010)), possession of less than 2.5 grams of cannabis (720 ILCS 550/4(a) (West 2010)), and failure to dim headlights (625 ILCS 5/12-210 (West 2010)). Thereafter, defendant filed a petition to rescind the statutory summary suspension of her driving privileges, which the trial court dismissed without prejudice. After receiving the results of defendant's urine test, the State mailed defendant the law enforcement sworn report on February 14, 2011. The report, however, was returned to the State as undeliverable. On February 28, 2011, the State charged defendant by information with DUI and mailed her confirmation of the statutory summary suspension. On April 1, 2011, defendant filed a motion to reinstate her petition to rescind the statutory summary suspension. The trial court granted the motion but denied the petition and defendant now appeals, contending that the trial court erred in denying the petition, because (1) the State failed to provide defendant with a hearing within 30 days of February 14, 2011, the day the notice of the summary suspension was mailed; (2) she was not served with the notice of the summary suspension; (3) the arresting officer, a male, violated Illinois law by administering the urine test to her and did not properly authenticate the sample; and (4) the State lacked probable cause to arrest her for DUI. We affirm.

¶ 2                                        I. Background

¶ 3        On November 12, 2012, while patrolling Route 34 near Eola Road, Officer Nathan Schramka observed that the headlights on defendant's vehicle appeared brighter than other headlights on the road. Defendant's vehicle was traveling behind Schramka's vehicle and she failed to dim her headlights. Schramka slowed his vehicle, allowing defendant to pull in front of him, and initiated a traffic stop. When Schramka explained the reason for the stop,

defendant told him that a friend incorrectly installed her headlights.

¶ 4    As Schramka spoke with defendant, he smelled a strong odor of cannabis coming from her vehicle. After being asked whether anyone smoked in the vehicle, defendant admitted that she smoked cannabis the previous day. Schramka asked defendant if there were any items in the vehicle, and defendant responded that rolling papers were located on the vehicle's floorboard. Schramka asked defendant if there was any cannabis in the vehicle, defendant acknowledged there was, and she retrieved marijuana from the car's center console. Schramka searched defendant and the other occupants of the vehicle, but found no other contraband.

¶ 5    Schramka arrested defendant for possession of cannabis. Defendant admitted that the marijuana belonged to her, and after first stating that she had not smoked cannabis since the prior day, she admitted that she smoked cannabis at approximately noon that day. Because Schramka believed that defendant was under the influence of drugs, he arrested her for DUI.

¶ 6    After arresting defendant, Schramka transported her to the Aurora police department and issued a citation for DUI. Thereafter, Schramka requested a urine sample, which defendant agreed to provide. Because there were no female officers present, Schramka placed defendant in a cell with a steel door and a small window. The cell contained a toilet located behind a five-foot-high brick wall. Schramka closed the cell door, but did not lock it, and stood approximately 10 to 15 feet away. Defendant came out of the cell and handed the sample to Schramka, who sealed and initialed the sample. Schramka transported the sample to the State Police regional headquarters.

¶ 7    On November 23, 2010, defendant filed a petition to rescind the summary suspension. Defendant acknowledged in her petition that she was not served with the notice of summary suspension form. The trial court dismissed the petition without prejudice on December 3, 2010.

¶ 8    The lab results for the sample were returned on February 14, 2011, and indicated the presence of tetrahydrocannabinol (THC), or cannabis. Schramka completed a law enforcement sworn report. On February 14, 2011, Schramka handwrote an envelope with the address defendant provided, inserted the sworn report, sealed the envelope, and mailed the sworn report to her by United States mail.

¶ 9    On February 25, 2011, Schramka noticed that the envelope addressed to defendant was returned as undeliverable. Schramka checked defendant's address on the Illinois Secretary of State's database, which indicated that her address was the same as the one he wrote on the envelope. Schramka did not attempt to resend the report to defendant. On February 28, 2011, defendant was charged by information with DUI and was sent a confirmation of her statutory summary suspension, scheduled to commence on April 1, 2011.

¶ 10    On April 1, 2011, defendant filed a motion to reinstate her petition to rescind and a motion to rescind the summary suspension because of the lack of a timely hearing. The trial court noted that it had dismissed defendant's November 23, 2010, petition because the file did not contain the notice of summary suspension. Defendant maintained that the "30-day clock" began running on February 14, 2011, the date that Schramka mailed the sworn report, because defendant had already filed a petition to rescind. The State countered that

defendant's November petition was premature because the sworn report had yet to be issued. According to the State, defendant had the opportunity to file a petition to rescind after the sworn report was served. The trial court, with a different presiding judge, disagreed with the dismissal of the November petition, but did not find error "because there was no sworn report." The trial court granted defendant's motion to reinstate her petition, but considered the petition filed on April 1, 2011. The trial court denied the motion to rescind.

¶ 11    On April 15, 2011, the trial court heard arguments on whether defendant's summary suspension should be rescinded because Schramka did not properly place her under arrest; he lacked reasonable grounds to believe that she was driving under the influence; he did not properly recite the warning to motorist; she did not test positive for illegal drugs; and she was not served with the notice of the summary suspension.

¶ 12    Defendant called Schramka to testify. Schramka testified that he initiated a traffic stop after defendant failed to dim her headlights. Schramka testified that he smelled a "strong odor of cannabis" coming from the car. Schramka testified that he asked defendant when was the last time someone smoked in the vehicle, and she responded that someone smoked in the vehicle the prior afternoon. Schramka asked defendant if "there was anything in the car [he] should know about," and defendant responded that there were rolling papers in the car. Schramka testified that he asked defendant if there was any "weed" in the car, and she responded "yes." Schramka testified that defendant retrieved marijuana from the vehicle's center console and that he placed her under arrest. Schramka testified that defendant admitted that she "smoked weed" earlier that day.

¶ 13    Defendant testified. Defendant testified that she agreed to submit to a urine test at the Aurora police department. Defendant testified that there were no female officers present when she submitted to the urine test. Defendant testified that she lived at 2428 Geneva Lane in Montgomery in February 2011. During that time, she did not receive a notice of summary suspension. On cross-examination, defendant acknowledged that she moved to her neighbor's house at 2436 Geneva Lane in the "middle of March" and did not update her address with the Secretary of State. On redirect examination, defendant testified that she checked her mail at her old address while she lived with her neighbor and moved back to her old house at the end of March.

¶ 14    Defendant's mother, Jola Davis, testified. Davis testified that she had lived at 2428 Geneva Lane continuously for the last eight years. Davis testified that she did not have difficulty receiving mail. Davis testified that she did not see the envelope containing the notice of summary suspension before the time of the hearing.

¶ 15    The trial court denied defendant's petition to rescind the summary suspension. The trial court concluded that Schramka substantially complied with the regulations for taking defendant's urine sample, preserved her dignity, and maintained the integrity of the sample. The trial court further found that Schramka was not required to take additional steps in mailing the sworn report. Specifically, the trial court concluded:

"I can't blame the U.S. Postal Service and grant a rescission based upon that. I think that there might have been other avenues, one more step might have been made by the arresting officer, but I don't think he's obligated to. *** He testified that he *** checked

-4-

[with] the Secretary of State again to see if there was any change of address and it was still the same address \*\*\*."

¶ 16    After the trial court denied her motion to reconsider, defendant timely appealed.

¶ 17                                    II. Discussion

¶ 18                              A. Timeliness of Hearing

¶ 19    Defendant's first contention on appeal is that the trial court erred by not rescinding her summary suspension because the State failed to provide her with a hearing within 30 days after the notice of the summary suspension was mailed. Defendant emphasizes that she properly filed a petition to rescind on November 23, 2010, which the trial court dismissed without prejudice on December 3, 2011. Defendant maintains that, because she filed a petition to rescind on November 23, 2010, that petition caused the 30-day period to run as soon as Schramka mailed her the sworn report on February 14, 2011. The State counters that, because defendant's original petition to rescind was both filed and dismissed before the notice of summary suspension was served on defendant, the 30-day period did not begin to run until April 1, 2011, when defendant filed a timely petition to rescind.

¶ 20    Determining how to compute the 30-day period for holding a hearing on a petition to rescind a statutory summary suspension presents a question of law subject to *de novo* review. *People v. Riffice*, 392 Ill. App. 3d 961, 963 (2009). Section 2-118.1(b) of the Illinois Vehicle Code (the Vehicle Code) provides:

> "Within 90 days after the notice of statutory summary suspension or revocation served under Section 11-501.1, the person may make a written request for a judicial hearing in the circuit court of venue. \*\*\* Within 30 days after receipt of the written request \*\*\*, the hearing shall be conducted by the circuit court having jurisdiction. \*\*\* The hearing[ ] shall proceed in the court in the same manner as in other civil proceedings." 625 ILCS 5/2-118.1(b) (West 2010).

"In interpreting section 2-118.1(b) of the Vehicle Code, we must ascertain and give effect to the legislature's intent." *People v. Moreland*, 2011 IL App (2d) 100699, ¶ 7. "The best indication of the legislature's intent is the language used in the statute, which must be given its plain and ordinary meaning." *Id.* (citing *People v. McClure*, 218 Ill. 2d 375, 382 (2006)). When statutory language is unambiguous, the statute must be applied as written without resorting to other aids of construction. *People v. Bywater*, 223 Ill. 2d 477, 481 (2006). Courts must construe the statute as a whole, bearing in mind both the subject the statute addresses and the legislature's objective in enacting it. *Moreland*, 2011 IL App (2d) 100699, ¶ 7. In doing so, however, a court "should not read into the statute exceptions, limitations, or conditions that the legislature did not provide." *Id.* (citing *McClure*, 218 Ill. 2d at 382).

¶ 21    In the current matter, the plain language of section 2-118.1(b) of the Vehicle Code unambiguously provides that a person may make a written request for a judicial hearing to rescind the summary suspension "[w]ithin 90 days *after* the notice of statutory summary suspension or revocation served under section 11-501.1." (Emphasis added.) 625 ILCS 5/2-118.1(b) (West 2010). Pursuant to the statute's plain language, by qualifying that a petition may be brought only "after" the notice of summary suspension is served, the legislature

clearly intended that such a petition may not be brought "before" the State serves the defendant with notice of the summary suspension. See *Webster's Ninth New Collegiate Dictionary* 62 (1990) (defining "after" as "following in time or place *** subsequent to in time or order"). To hold otherwise would be tantamount to reading into section 2-118.1(b) a condition that the legislature did not provide. See *McClure*, 218 Ill. 2d at 382.

¶ 22   Having determined that section 2-118.1(b) of the Vehicle Code permits a petition to rescind a summary suspension to be properly brought only after the State has served notice of the suspension, the remaining question is when defendant properly brought her petition. Pursuant to section 2-118.1(b), a defendant may bring a petition within 90 days after being served notice pursuant to section 11-501.1 of the Vehicle Code. 625 ILCS 5/2-118.1(b) (West 2010). Section 11-501.1(d) of the Vehicle Code provides in pertinent part:

"If the person *** submits to a test that discloses *** any amount of a drug, substance, or intoxicating compound in the person's breath, blood, or urine resulting from the unlawful use or consumption of cannabis ***, the law enforcement officer shall immediately submit a sworn report to the circuit court of venue and the Secretary of State ***." 625 ILCS 5/11-501.1(d) (West 2010).

Further, subsection (f) provides:

"The law enforcement officer submitting the sworn report under paragraph (d) shall serve immediate notice of the statutory summary suspension or revocation on the person and the suspension or revocation and disqualification shall be effective as provided in paragraph (g). In cases where *** any amount of a drug, substance, or compound resulting from the unlawful use or consumption of cannabis *** is established by a subsequent analysis of blood or urine collected at the time of arrest, the arresting officer *** shall give notice as provided in this [s]ection or by deposit in the United States mail of the notice in an envelope with postage prepaid and addressed to the person at his address as shown on the Uniform Traffic Ticket ***." 625 ILCS 5/11-501.1(f) (West 2010).

¶ 23   Here, the record clearly reflects that the State had yet to serve defendant with notice of the summary suspension when she filed her November 23, 2010, petition to rescind. At that time, Schramka's sworn report was not completed, because he was waiting for the results of defendant's urine test. Further, defendant acknowledged in her petition that she "was not served with the [n]otice of [s]ummary [s]uspension form." After Schramka mailed defendant the sworn report and defendant received confirmation of the summary suspension, defendant filed a motion to reinstate her petition. Therefore, defendant properly filed her petition on April 1, 2011, and was afforded a hearing within 30 days of that date.

¶ 24   Defendant cites *Moreland*, *People v. Fitterer*, 322 Ill. App. 3d 820 (2001), and *People v. Madden*, 273 Ill. App. 3d 114 (1995), as "controlling precedent" for the proposition that the State failed to provide her with a hearing within 30 days of her properly filed petition to rescind. In *Moreland*, the defendant was pulled over for driving erratically, and a Breathalyzer confirmed that he was driving under the influence. *Moreland*, 2011 IL App (2d) 100699, ¶ 2. The arresting officer immediately served the defendant with a sworn report advising the defendant that his driving privileges would be suspended in 46 days and that he

had a right to a hearing. *Id.* On May 4, 2010, the defendant filed a petition to rescind. *Id.* ¶ 3. At the first court hearing, the defendant pointed out that he did not have a confirmation of the suspension. *Id.* Over the defendant's objection, the trial court continued the matter, advising the defendant that the 30 days in which he was entitled to a hearing would not be tolled. *Id.* Thereafter, the Secretary of State filed the confirmation of the suspension with the trial court, and on June 4, 2010–31 days after the defendant filed his petition–the defendant moved to rescind the suspension on the basis that he was not afforded a hearing within 30 days. *Id.* ¶ 4. The trial court granted the defendant's petition to rescind (*id.*), and we affirmed after concluding that the 30-day period in which the defendant was entitled to a hearing began to run before the Secretary of State confirmed the suspension. *Id.* ¶ 11.

¶ 25    In *Fitterer*, the defendant was arrested for DUI on August 14, 1999, and given notice of a summary suspension. *Fitterer*, 322 Ill. App. 3d at 821-22. The defendant filed a petition to rescind on September 22, 1999. During the initial court hearing, the trial court found that the record indicated no pending suspension and, therefore, struck the petition while granting the defendant leave to reinstate it. *Id.* at 822. Thereafter, the defendant reinstated his petition, which the trial court granted after concluding that the defendant had been entitled to a hearing within 30 days of the date he originally filed his petition. *Id.* We affirmed, concluding:

"After he received the valid August 14 notice, [the] defendant promptly filed his petition to rescind. The 30-day period began, entitling [the] defendant to a hearing by October 22. No such hearing occurred, however, because the record did not timely reflect a pending suspension. The delay was attributable to the arresting officer, not the Secretary, but the crucial point is that it was not occasioned by [the] defendant." *Id.* at 824.

¶ 26    In *Madden*, the defendant was arrested for DUI on September 3, 1994, and the arresting officer served him with notice of a summary suspension. *Madden*, 273 Ill. App. 3d at 114. The defendant filed a petition to rescind the summary suspension on September 30, 1994. *Id.* At the initial court hearing, the parties advised the trial court that the defendant's abstract did not indicate that a summary suspension was pending, and the trial court dismissed the petition as unripe, with leave to reinstate. *Id.* at 114-15. On November 18, 1994, the defendant reinstated the petition and the trial court denied it. *Id.* at 115. The reviewing court reversed, noting that the Secretary of State had not confirmed the suspension within 30 days of the filing of the petition. *Id.* at 116. The reviewing court emphasized that ripeness would not have been an issue at the initial hearing, and a timely hearing would have occurred, if the confirmation of the suspension had been sent out in a more seasonable manner. *Id.* Because the delay in holding the hearing was attributable to the State, the reviewing court concluded, the defendant's summary suspension must be rescinded. *Id.*

¶ 27    *Moreland*, *Fitterer*, and *Madden* are not applicable to the present matter. In each of those cases, the defendant properly filed a petition to rescind after having been served with notice of a summary suspension. Conversely, here, as defendant acknowledged in her November 23, 2010, petition, she had not yet been served with notice of a summary suspension. As noted above, the plain and unambiguous language of section 2-118.1(b) provides that a person may request a judicial hearing *after* notice of a summary suspension is served. 625 ILCS 5/2-118.1(b) (West 2010). Thus, the simple point escaping defendant is that, to adopt

her position and conclude that her November 23, 2010, petition was properly before the trial court–even though she had yet to be served with notice of a summary suspension–would require us to disregard clear statutory intent by reading into the statute a condition where none exists.

¶ 28    Accordingly, defendant was properly afforded a hearing within 30 days of her timely filed petition to rescind her summary suspension, as mandated by section 2-118.1(b) of the Vehicle Code.

¶ 29                    B. Service of Summary Suspension Notice

¶ 30    Defendant next contends that the trial court erred in not rescinding her statutory summary suspension because the State failed to properly serve her with notice of the summary suspension. Defendant argues that section 11-501.1(f) of the Vehicle Code provides that the law enforcement officer submitting the sworn report "shall" serve immediate notice of the summary suspension. According to defendant, the State failed to comply with section 11-501.1(f) because the addressed envelope containing the notice was returned to Schramka as undeliverable. The State argues that it complied with section 11-501.1(f) because Schramka placed the notice in the United States mail in an envelope addressed to defendant, at the address she provided, with prepaid postage.

¶ 31    Whether the State properly served defendant pursuant to section 11-501.1(f) presents an issue of statutory construction subject to *de novo* review. *People v. Collins*, 214 Ill. 2d 206, 214 (2005). As noted above, the primary objective of statutory interpretation is to ascertain the legislative intent. *People v. Kohl*, 364 Ill. App. 3d 495, 499 (2006). The plain language of a statute is the best indication of legislative intent. *Collins*, 214 Ill. 2d at 214. A court should not depart from plain statutory language by reading into the statute exceptions, limitations, or conditions that conflict with the legislative intent, nor is a court permitted to inject provisions that are not found in the statute. *People v. Roberts*, 214 Ill. 2d 106, 116 (2005). "[W]hen the language of a statute or rule is unambiguous, the only legitimate function of courts is to enforce the law as written." *Id.* at 120-21.

¶ 32    The plain and unambiguous language of section 11-501.1(f) of the Vehicle Code reflects that the legislature intended for service of the notice of summary suspension to be satisfied by mailing with prepaid postage the notice to the defendant's address as shown on the traffic ticket. Specifically, that section provides that, when a drug concentration is determined by an analysis of blood or urine, the arresting officer can give notice by depositing in the United States mail the notice in an envelope, postage prepaid, addressed to the person as shown on the traffic ticket. 625 ILCS 5/11-501.1(f) (West 2010). If the legislature had intended to require a law enforcement officer to ensure receipt of the notice, for example, it could have required that service of the notice conform with section 2-203 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-203 (West 2010)), governing service on individuals when commencing a civil action. Section 2-203 provides that service may be made upon an individual by leaving a copy of the summons with the individual personally or by leaving a copy at the individual's "usual place of abode," with a person residing there who is at least 13 years old, provided that the summons is also mailed to that address in a sealed envelope

-8-

with prepaid postage. 735 ILCS 5/2-203 (West 2010). Therefore, our legislature's use of statutory language in section 11-501.1(f) permitting a law enforcement officer to serve the notice of summary suspension by United States mail, provided that certain conditions are followed, but declining to require the State to physically leave a copy of the notice with the defendant or at the defendant's usual place of abode, reflects its clear intent that the State is not required to take additional steps to ensure that the defendant receives the notice. See *People v. Spencer*, 408 Ill. App. 3d 1, 8 (2011) ("The maxim *expressio unius est exclusio alterius* is an aid of statutory construction that means 'the expression of one thing is the exclusion of another.' [Citation.] This maxim is based in logic and common sense and dictates that where a statute or regulation lists the things to which it refers, it may be inferred that all omissions therefrom should be understood as exclusions.").

¶ 33    Here, the record unequivocally reflects, and defendant concedes, that Schramka placed the notice of summary suspension in a sealed envelope, postage prepaid, addressed to defendant at the address shown on the ticket. Therefore, the State complied with the notice requirements pursuant to section 11-501.1(f) of the Vehicle Code.

¶ 34    In support of her contention, defendant cites *People v. Osborn*, 184 Ill. App. 3d 728 (1989). In *Osborn*, the State appealed a judgment from the trial court granting the defendant's petition to rescind the statutory summary suspension because the defendant was not served with notice of the suspension, as required by statute. *Id.* at 728-29. The State argued that, because the defendant availed himself of his right to a hearing, he was not prejudiced by the lack of statutory notice. *Id.*

¶ 35    This court rejected the State's argument on the basis that the State had failed to raise it before the trial court and thus had forfeited it. *Id.* at 729. The reviewing court further noted in *dicta* that the argument would not be persuasive, even if it were properly before the court, because due process required that a defendant be given notice "as required by statute." *Id.* at 730. Therefore, the reviewing court concluded, until the State served the defendant with notice of a summary suspension, there could be no suspension to be confirmed or rescinded. *Id.*

¶ 36    Defendant's reliance on *Osborn* is misplaced. Defendant emphasizes that "it was undisputed that the defendant was never served the notice of the sworn report." However, here, there is a dispute as to whether Schramka's mailing defendant the sworn report satisfied the statute's service requirements. Specifically, the court in *Osborn* was silent as to whether the State made any effort to comply with the statute's service requirements or made any other attempt to serve the defendant with notice of the summary suspension. Conversely, in this case, the record unequivocally reflects that Schramka placed the sworn report in a sealed envelope, postage prepaid, and addressed the envelope to defendant as shown on the ticket. When the package was returned, Schramka undertook the additional step of double-checking defendant's address on the Secretary of State's database. As discussed above, those steps were sufficient to comply with the service requirements put forth in section 11-501.1(f) of the Vehicle Code. Therefore, because *Osborn* primarily concerned forfeiture and was silent as to the State's compliance with the statute's service requirements, we find its holding irrelevant here.

¶ 37                                 C. Urine Test

¶ 38        Defendant's third contention is that Schramka improperly administered the urine test and
failed to properly authenticate the sample. Specifically, defendant argues that the State failed
to comply with section 1286.330 of title 20 of the Illinois Administrative Code (the
Administrative Code), which requires a police officer, agency, employee, or nurse to be of
the same gender as the person undergoing the test. 20 Ill. Adm. Code 1286.330 (2012).
Defendant also argues that Schramka could not authenticate the sample, because he did not
watch her urinate while she provided the sample. The State responds that it complied with
section 1286.330 because Schramka, as the arresting officer, was authorized to collect the
sample. The State maintains that, even if the Administrative Code requires the person
administering the test to be of the same gender as the defendant, the State substantially
complied with it.

¶ 39        Section 11-501.2(a) of the Vehicle Code provides that evidence of a drug concentration
in a person's blood, as determined by that person's blood, urine, breath, or other bodily
substance, is admissible. 625 ILCS 5/11-501.2(a) (West 2010). Section 11-501.2(a)(1)
further provides that a chemical analysis of a person's blood, urine, breath, or other bodily
substance shall be performed according to standards promulgated by the Department of State
Police (State Police). 625 ILCS 5/11-501.2(a)(1) (West 2010). The Vehicle Code specifically
references part 1286 of title 20 of the Administrative Code. See *People v. Henry*, 398 Ill.
App. 3d 1019, 1022 (2010). Section 1286.330 provides in relevant part:

        "The following procedures shall be used to obtain a urine sample from a subject to
        determine the presence of alcohol, other drugs or intoxicating compounds:

                (a) A sample of urine shall be collected in a manner to preserve the dignity of the
                individual and to ensure the integrity of the sample.

                (b) A urine sample may be collected by the arresting officer, another law
                enforcement officer, an agency employee, or a hospital nurse who can authenticate
                the sample. The officer, agency employee, or nurse shall be of the same sex as the
                subject undergoing the testing." 20 Ill. Adm. Code 1286.330 (2012).

¶ 40        In this case, Schramka substantially complied with section 1286.330 in collecting
defendant's urine. We find support for our finding in *People v. Bishop*, 354 Ill. App. 3d 549
(2004). In *Bishop*, the defendant was convicted of DUI resulting in an automobile accident.
*Id.* at 551. On appeal, the defendant argued that the State failed to collect a sample of his
urine in compliance with section 1286.330(d) of title 20 of the Administrative Code, which
required that the " 'urine sample shall be collected from the subject's first emptying of the
bladder in a clean, dry container.' " *Id.* at 555 (quoting 20 Ill. Adm. Code 1286.330(d)
(2002)). The defendant noted that the hospital drew the first urine sample and that the second
sample, drawn by police, was taken hours later; therefore, the second sample did not strictly
conform with section 1286.330(d). *Id*. The reviewing court rejected the defendant's
argument, finding that substantial compliance was sufficient and that substantial compliance
was satisfied in that case. *Id.* at 556. The reviewing court noted that hospital procedure
prevented the State from taking a sample from the first emptying of the bladder. *Id.* The

-10-

reviewing court further noted that, "if we were to agree that any deviation whatsoever from the regulations rendered the results of a sample inadmissible, 'we would be ignoring the fact that strict compliance is not always realistically or humanly possible.' " *Id.* (quoting *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 34).

¶ 41     We find the reasoning in *Bishop* persuasive in the current matter. Schramka testified that he brought defendant to the Aurora police department and asked if a female officer was present to assist him in administering the urine test. The officers at the police department responded that no female officers were present, so Schramka had defendant collect the urine sample while she was in a cell, with the cell door closed, and behind a wall. We agree with the court's finding in *Bishop* that, because strict compliance with the regulations is not always realistic, only substantial compliance is required. Thus, we hold that the slight deviation here did not render the sample inadmissible.

¶ 42     In reaching our determination, we note that defendant's dignity and the integrity of the sample were preserved while she collected the sample, as required by section 1286.330(a). Ill. Adm. Code 1286.330 (2012). With respect to defendant's dignity, Schramka testified that defendant went into a cell with a solid steel door and a small window. The cell contained a toilet behind a brick wall that was five feet high. While defendant collected the sample, the door to the cell was closed, but not locked, and Schramka stood 10 to 15 feet away. Schramka testified that he could not see defendant. When finished, defendant advised Schramka, and he testified that she was fully dressed. At that point, Schramka opened the cell door and defendant handed him the sample. Defendant's testimony regarding the urine collection was consistent with Schramka's testimony. Defendant acknowledged that she collected the sample in a cell behind a brick wall. She admitted that she could not see Schramka or any other officers while she collected the sample and that there were no other people in the cell while she collected the sample.

¶ 43     Moreover, the integrity of the sample was also preserved. Schramka testified that, after defendant handed him the sample, he sealed the container, initialed it, and transported it to the State Police regional headquarters. Defendant admitted that, when she provided the sample, there were no other substances in the cell and that she handed the sample directly to Schramka after she provided it. The record is devoid of any indication that the sample was compromised.

¶ 44     Based on the foregoing, we conclude that, consistent with the reviewing court's holding in *Bishop*, strict compliance with section 1286.330 was not required. In the present case, the State substantially complied with section 1286.330 because defendant's dignity and the integrity of the sample were preserved.


¶ 45                          D. Probable Cause to Arrest Defendant

¶ 46     Defendant's final contention is that Schramka lacked probable cause to arrest her. Defendant disputes "whether [Schramka] had the requisite knowledge to even formulate an opinion that [she] was under the influence of cannabis." The State counters that Schramka had a sufficient knowledge base to believe that defendant was under the influence of cannabis, noting that Schramka testified that he completed a 40-hour course in alcohol and

drug DUI detection while in the police academy, followed by a "refresher course" in May 2009.

¶ 47    "A hearing on a petition to rescind a summary suspension of driving privileges is a civil proceeding." *People v. Marsala*, 376 Ill. App. 3d 1046, 1048 (2007). Where a defendant, as here, alleges that the arresting officer did not have reasonable grounds to believe that she or he was driving under the influence, the defendant bears the burden to produce *prima facie* evidence that the officer lacked reasonable grounds. See *People v. Stanton*, 269 Ill. App. 3d 654, 656 (1995). Evidence may include the defendant's testimony that she or he was driving properly, exhibited no symptoms of drug or alcohol impairment, or was not driving. See *People v. Bavone*, 394 Ill. App. 3d 374, 377 (2009). When the State moves for entry of judgment at the close of the defendant's evidence, the trial court must consider all evidence, including evidence favorable to the State, and, in doing so, assess witness credibility, draw all reasonable inferences from the testimony, and consider the weight and quality of the evidence. *Id.* (citing *People v. Tibbetts*, 351 Ill. App. 3d 921, 927-28 (2004)).

¶ 48    When determining whether reasonable grounds existed for an arrest, courts employ the probable cause analysis derived from the fourth amendment. *People v. Wear*, 229 Ill. 2d 545, 560-61 (2008). When using this test, we apply a two-part standard of review. *Id.* at 561 (citing *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006)). "A reviewing court will uphold findings of historical fact made by the circuit court unless such findings demonstrate clear error, and a reviewing court must give due weight to any inferences drawn from those facts by the fact finder." *Id.* However, we review *de novo* the trial court's ultimate legal ruling as to whether a petition to rescind should be granted. *Id.* at 562.

¶ 49    In this case, Schramka had probable cause to arrest defendant. Schramka testified that he had 40 hours of DUI drug and alcohol training at the police academy, followed by a one-day "refresher course" in May 2009. Schramka further testified that he made seven or eight DUI arrests relating to cannabis before arresting defendant.

¶ 50    Moreover, defendant's emphasis on Schramka's technical training with respect to cannabis misconstrues the practical nature of probable cause. Probable cause is not guilt beyond a reasonable doubt. *People v. Jackson*, 232 Ill. 2d 246, 275 (2009). Instead, as our supreme court has emphasized, probable cause deals with probabilities and involves "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." (Internal quotation marks omitted.) *Id.* As a result, "the existence of probable cause depends upon the totality of the circumstances at the time of the arrest." *Wear*, 229 Ill. 2d at 564. Here, Schramka testified that there was an odor of cannabis coming from defendant's vehicle, that defendant admitted there were rolling papers in the car, and that she admitted that she smoked cannabis earlier in the day. Based on the above testimony, a reasonable and cautious person could have concluded that defendant was driving under the influence of cannabis. See *id.* at 565. Therefore, probable cause existed to arrest defendant for DUI.

¶ 51    We reject defendant's argument that the evidence presented at the hearing was insufficient to support a probable-cause finding. Section 11-501(a)(6) prohibits a person from being in physical control of a vehicle if there is "any" amount of an unlawfully consumed

substance in that person's urine. 625 ILCS 5/11-501(a)(6) (West 2010). Schramka testified that he smelled a strong odor of cannabis coming from defendant's vehicle; defendant retrieved marijuana from the vehicle's center console and admitted to him that she smoked marijuana earlier that day. Based on that evidence, Schramka could have reasonably suspected that defendant was operating a vehicle with an unlawfully consumed substance in her urine.

¶ 52       We find support for this finding in our recent decision in *People v. Miranda*, 2012 IL App (2d) 100769. In *Miranda*, the defendant was indicted for driving while his urine contained any amount of cannabis pursuant to section 11-501(a)(6). *Id.* ¶ 2. Noting that the probable-cause test was "highly deferential," we concluded that the arresting officer lacked probable cause to collect a urine sample when his affidavit averred to finding physical evidence of alcohol consumption but said "next to nothing about controlled substances, and what scant mention it did make was unsupported by facts." *Id.* ¶ 11. Specifically, the affidavit referenced only beer bottles, that the officer smelled alcohol on the defendant's breath and learned from the defendant that he had consumed alcohol, and that the defendant failed a field sobriety test. *Id.* The affidavit's only reference to a controlled substance was the officer's "professional opinion that [the defendant was] under the influence of alcohol and/or drugs." *Id.* ¶ 12.

¶ 53       Although we reached the opposite conclusion in *Miranda*, *i.e.*, that the officer did not have sufficient evidence of substance use to amount to probable cause, its reasoning is instructive here. Unlike in *Miranda*, Schramka testified that he smelled a strong odor of cannabis coming from the car, defendant told him there were rolling papers in the car, defendant retrieved marijuana from the vehicle's center console, and defendant admitted to him that she "smoked weed" earlier that day. Clearly, Schramka's testimony regarding a strong odor of cannabis, defendant's retrieving marijuana from the vehicle, and defendant's acknowledgment that she smoked marijuana earlier that day was sufficient to satisfy the "highly deferential" probable-cause test. Therefore, Schramka had probable cause to conclude that defendant was operating her vehicle with an unlawfully consumed substance in her urine.

¶ 54                                    III. Conclusion

¶ 55       For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 56       Affirmed.