2016 IL App (3d) 150806

Opinion filed December 8, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | Appeal No. 3-15-0806 Circuit Nos. 15-DT-715 and 15-TR-38164 |
| | ) | |
| ADALIE M. KAVANAUGH, | ) ) | Honorable Bennett J. Braun, |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justice Carter concurred in the judgment and opinion.
Justice Holdridge specially concurred, with opinion.

**OPINION**

¶ 1    The State appeals the trial court's order granting the petition to rescind statutory summary suspension filed by defendant, Adalie M. Kavanaugh. The State argues that the evidence presented at the hearing on the petition was sufficient to establish that the arresting officer had reasonable grounds to believe defendant was operating a vehicle while under the influence of cannabis. We reverse and remand for further proceedings.

¶ 2                                                    FACTS

¶ 3        Defendant was charged with driving under the influence of drugs (625 ILCS 5/11-501(a)(4) (West 2014)) for an incident that occurred on May 13, 2015. On August 26, 2015, defendant was also charged with driving with any amount of cannabis in her breath, blood, or urine, resulting from the unlawful use of cannabis in violation of section 11-501(a)(6) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501(a)(6) (West 2014)) in connection with the incident on May 13, 2015.

¶ 4        A confirmation of statutory summary suspension from the Office of the Secretary of State was filed on September 8, 2015. Defendant filed a petition to rescind statutory summary suspension, arguing that: (1) she was not properly placed under arrest for an offense as defined in section 11-501 of the Code (625 ILCS 5/11-501 (West 2014)); (2) the arresting officer did not have reasonable grounds to believe she was driving while under the influence of alcohol (DUI), drugs, or a combination thereof; (3) she was not properly warned by the arresting officer pursuant to section 11-501.1 of the Code (625 ILCS 5/11-501.1 (West 2014)); and (4) she did not refuse to submit to or complete required chemical testing upon the request of the arresting officer.

¶ 5        A hearing was held on defendant's petition. Defendant called Trooper Matt Windisch as her only witness. Windisch testified that he had been employed with the Illinois State Police for approximately 2½ years. Windisch had received training in DUI detection, including training on detecting whether a driver was under the influence of drugs. Windisch completed a 40-hour course, of which approximately half was dedicated to cannabis or drug detection.

¶ 6        On the evening of the incident, Windisch was at a traffic stop on Interstate 80 when he observed a dark sedan drive off the road and crash into the ditch. Windisch drove to the scene of

that accident and observed the sedan in the ditch and a blue Ford parked on the shoulder of the highway across from the ditch. Windisch approached the blue Ford and spoke with defendant, who had been the driver. Defendant told Windisch that she "failed to check her blind spot and cut off the other vehicle, causing it to go into the ditch." Defendant's vehicle never made contact with the other vehicle.

¶ 7 When Windisch approached the Ford, he detected the odor of burnt cannabis. Windisch asked defendant if she had anything illegal in the car, and she eventually admitted that she had cannabis. Defendant also had a pipe and a grinder in her car. Windisch testified that the cannabis was located under the seat. Defendant told Windisch she smoked cannabis approximately one week prior to the incident.

¶ 8 Windisch did not observe that defendant had any difficulty walking when she exited her vehicle, and he did not smell cannabis on defendant's breath. Windisch had defendant perform several field sobriety tests, including the walk-and-turn and one-leg stand tests. Windisch stated that defendant failed the walk-and-turn test because: (1) she "missed heel to toe" on steps four through nine, as well as all of her return steps; (2) she made an improper turn; and (3) she held her arms out more than six inches from her side. Defendant also failed the one-leg stand test because she swayed and used her arms. Windisch stated that defendant put her hands out to her side when she first raised her foot but kept them at her side after that.

¶ 9 Windisch testified that he had also been trained to check a person's eyes for drug impairment. Windisch testified that in detecting impairment for cannabis, he was trained to look for lack of convergence. Windisch observed "[s]trong lack of convergence" in defendant's left eye.

¶ 10　　　　Windisch testified that he arrested defendant because she admitted to improper lane usage causing another vehicle to crash, Windisch detected the odor of burnt cannabis in her car, defendant had cannabis and paraphernalia in the car, and defendant failed the field sobriety tests. Windisch was also convinced defendant was unable to safely operate a motor vehicle.

¶ 11　　　　Windisch testified that his dashboard camera was operating during the encounter and that the entire encounter would have been videotaped. The video recording was played in open court. The video showed that Windisch's encounter with defendant occurred at night on the shoulder of an interstate. It was difficult at times to hear what defendant and Windisch were saying to each other because the noise from the traffic was very loud. While Windisch was explaining the directions for the walk-and-turn test, defendant raised her arms out far from her body, as if to gain her balance. Windisch then told her to keep her arms at her sides. While actually performing the test, defendant appeared to walk in a straight line but held her arms out to the side. While performing the one-leg stand test, defendant initially raised her arms to gain her balance. It did not appear that she raised her arms again after that.

¶ 12　　　　The State moved for a directed finding. The trial court took the State's motion under advisement. The trial court then stated: "Here's my take on this at this point, just so you folks know. The field sobriety tests, to me, seem borderline at best." The trial court noted that defendant performed the tests on the side of an expressway with heavy traffic, including semi trucks, driving by approximately 10 feet away from her. The trial court opined, "[I]t doesn't seem to me that there's an awful lot of basis there to determine the defendant was under the influence of, of drugs."

¶ 13　　　　The trial court ultimately denied the motion for directed finding. The court noted that Windisch had testified that he did not detect an odor of cannabis on defendant's breath.

¶ 14 The State recalled Windisch in its case-in-chief. Windisch again testified that he completed a training course on drug impairment that lasted approximately 40 hours. One to two days of the training focused on cannabis. Windisch testified that the active agent in cannabis was tetrahydrocannabinol (THC). Windisch learned to administer a convergence test to detect cannabis impairment. Windisch explained the test as follows:

> "Which is a test where the subject will follow our eyes—or our finger or stimulus in a circle. And we will get close to the subject's face, between their eyes, and they are supposed to follow our finger.
>
> Indication of THC consumption makes, makes it difficult for the subject's eyes to follow the stimulus towards their body. You can kind of compare it to one eye staying straight, whereas the other eye will follow your finger."

¶ 15 Windisch testified that, based on his experience, a lack of convergence indicated that an individual had THC in his or her system. Windisch performed a convergence test on defendant, and observed a strong lack of convergence in defendant's left eye. Windisch acknowledged that "some of the population" were unable to do a convergence test.

¶ 16 Windisch had tested approximately "half a dozen" people for drug impairment prior to the incident involving defendant. Windisch testified the walk-and-turn and one-leg stand tests were scored the same in cases of alcohol and drug impairment. Windisch stated, however, that when he suspected cannabis impairment he looked for gaps between the feet and holding arms away from the body because THC creates "a difficulty in spatial judgment."

¶ 17 Windisch testified that, based on his training and experience, he was familiar with the difference between the odor of stale burnt cannabis and freshly burnt cannabis. Windisch testified that freshly burnt cannabis had a stronger odor and "you can smell it more so in the air."

5

In this case, Windisch stated, the odor of cannabis was "more freshly burnt" than stale. Based on the strength of the odor in defendant's car, Windisch did not believe defendant when she told him she smoked cannabis a week prior. Windisch did not detect an odor of cannabis on defendant's breath. Windisch explained, however, that he had many experiences where "we've observed people smoking weed and it has not been—smoking cannabis, you know, has not been on their breath at all."

¶ 18    Windisch testified that when defendant was still in her car, she produced a bag from under the front passenger seat that contained cannabis and a grinder. Windisch observed a glass pipe on the driver's seat after defendant exited the vehicle. The parties stipulated that Windisch's report said the pipe was found under the front passenger's seat.

¶ 19    After hearing arguments, the trial court granted the petition to rescind statutory summary suspension. The court reasoned: "What the Court finds as critical evidence is that although there was an odor of cannabis in the vehicle, the trooper testified that when the defendant was outside the vehicle, he did not observe any odor of burnt cannabis on her person or otherwise on her breath."

¶ 20    The court stated that it was giving no weight to the convergence test because the court was unfamiliar with any scientific basis for the test. After reviewing the video of the walk-and-turn and one-leg stand tests, the court concluded: "The Court finds that those field sobriety tests are actually favorable to the defendant. I do not characterize those as fails." The trial court stated that it placed "significant weight" on the fact that the tests were performed on the shoulder of the interstate with heavy traffic passing within 10 to 15 feet of defendant. The trial court concluded: "I simply find the defendant did relatively well and that the video simply does not corroborate the trooper's testimony as to those tests being indicative of the defendant being under the

6

influence of cannabis." The trial court also noted that there was a lack of evidence as to defendant's demeanor, including whether she had red eyes or slurred speech.

¶ 21 The trial court found that the following evidence was favorable to the State: (1) defendant's lane violation; (2) the odor of cannabis in defendant's vehicle; (3) defendant's admission that she consumed cannabis a week earlier; and (4) the cannabis, pipe, and grinder found in defendant's vehicle. The court accepted Windisch's testimony that he detected an odor of burnt cannabis, but did not accept his opinion testimony that the cannabis was freshly burnt. The court did not accept Windisch's testimony that the pipe was found on the driver's seat, but found that the pipe was located under the front passenger seat.

¶ 22                                    ANALYSIS

¶ 23 The State argues that the trial court erred in granting the petition to rescind statutory summary suspension. Specifically, the State contends that the evidence at the hearing on the petition established that Windisch had reasonable grounds to believe defendant committed a DUI violation.

¶ 24 Initially, we note that defendant has failed to file a brief on appeal. Therefore, we decide this case pursuant to the holding in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). In *Talandis*, the supreme court held that in the absence of an appellee brief, the reviewing court may decide the merits of an appeal "if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief." *Id.* If the issues are not easily decided, we may reverse the judgment of the trial court if the appellant's brief demonstrates *prima facie* reversible error. *Id.* " '*Prima facie* means, "at first sight, on the first appearance; on the face of it, so far as can be judged from the first disclosure; presumably; a fact presumed to be true unless disproved by some evidence to the

contrary." ' " *Id.* at 132 (quoting *Harrington v. Hartman*, 233 N.E.2d 189, 191 (Ind. Ct. App. 1968), quoting *Ellet v. Ellet*, 205 N.E.2d 555, 556 (Ind. Ct. App. 1965)). We find that the issue raised by the State is not easily decided and demonstrates *prima facie* reversible error.

¶ 25        The scope of a hearing on a petition to rescind statutory summary suspension is limited to the following issues:

> "1. Whether the person was placed under arrest for an offense as defined in Section 11-501, or a similar provision of a local ordinance, as evidenced by the issuance of a Uniform Traffic Ticket ***; and
>
> 2. Whether the officer had reasonable grounds to believe that the person was driving or in actual physical control of a motor vehicle upon a highway while under the influence of alcohol, other drug, or combination of both; and
>
> 3. Whether the person, after being advised by the officer that the privilege to operate a motor vehicle would be suspended or revoked if the person refused to submit to and complete the test or tests, did refuse to submit to or complete the test or tests to determine the person's blood alcohol or drug concentration; or
>
> 4. Whether the person, after being advised by the officer that the privilege to operate a motor vehicle would be suspended if the person submits to a chemical test, or tests, and the test discloses an alcohol concentration of 0.08 or more, or any amount of a drug, substance, or compound in the person's blood or urine resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act, *** and the person did submit to and complete the test or tests that determined an alcohol concentration of 0.08 or more." 625 ILCS 5/2-118.1(b)(1) to (4) (West 2014).

¶ 26        In the instant case, the issue was whether the arresting officer had reasonable grounds to believe that defendant was driving while under the influence of cannabis under section 2-118.1(b)(2) of the Code (625 ILCS 5/2-118.1(b)(2) (West 2014)). "In determining whether there has been 'reasonable grounds' under subsection (b)(2) of the statute, this court has utilized the probable cause analysis deriving from the fourth amendment." *People v. Wear*, 229 Ill. 2d 545, 560 (2008). "Probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime." *Id.* at 563. " ' "The standard for determining whether probable cause is present is probability of criminal activity, rather than proof beyond a reasonable doubt. [Citations.]" ' " *Id.* at 564 (quoting *People v. Garvin*, 219 Ill. 2d 104, 115 (2006), quoting *People v. Lee*, 214 Ill. 2d 476, 485 (2005)). "[P]robable cause does not even demand a showing that the belief that the suspect has committed a crime be more likely true than false." *Id*.

¶ 27        " '[W]e give great deference to the trial court's factual findings, and we will reverse those findings only if they are against the manifest weight of the evidence.' " *Id.* at 561 (quoting *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006)). However, " 'we review *de novo* the trial court's ultimate legal ruling' as to whether the petition to rescind should be granted." *Id.* at 562 (quoting *Luedemann*, 222 Ill. 2d at 542-43).

¶ 28        Initially, we note that the trial court properly refused to consider Windisch's testimony regarding the convergence test. From the outset of Windisch's testimony about the convergence test, the defendant strenuously objected to such testimony due to the lack of reliability of the results. The defendant challenged the acceptance of these test results within the scientific and legal community. In denying the State's motion for a directed finding, the trial court found defendant had made a *prima facie* case for rescission. The burden then shifted to the State. The

9

State was then required to lay an adequate foundation for the convergence test in order to introduce the results of the test in its case-in-chief. See *People v. Rozela*, 345 Ill. App. 3d 217, 228 (2003). The State failed to adequately demonstrate a scientific basis for the convergence test. Instead, Windisch merely described the test and testified that he had learned to perform the test at a training course. Windisch admitted that some of the population was unable to do a convergence test but offered no further explanation. Without more, Windisch's testimony regarding the convergence test did not lay a sufficient foundation for admission of the test. Consequently, the trial court properly refused to consider the test and we will not consider the test in our analysis.

¶ 29    Nevertheless, we find that, even accepting the trial court's factual findings, the evidence at the hearing established that Windisch had reasonable grounds to believe defendant was driving while under the influence of cannabis. Windisch testified that defendant admitted that she failed to check her blind spot before changing lanes, causing another vehicle to drive into the ditch. See *People v. Brodeur*, 189 Ill. App. 3d 936, 941 (1989) (holding that the fact that the "defendant had clearly been in a motor vehicle accident, which the officer could have reasonably surmised had been caused, at least in part, by her intoxication" was relevant in determining that the officer had probable cause to arrest the defendant).

¶ 30    Windisch also detected a strong odor of burnt cannabis in defendant's car and located a pipe, grinder, and cannabis under defendant's front passenger seat. In *People v. Davis*, 2012 IL App (2d) 110581, ¶ 50, the court held that probable cause to arrest for DUI existed in similar circumstances. Specifically, in *Davis*, the arresting officer testified that there was an odor of cannabis emitting from the defendant's vehicle, there were rolling papers and cannabis in the defendant's vehicle, and the defendant admitted she had smoked cannabis earlier that day. *Id.*

Although defendant in the instant case told Windisch that she had smoked cannabis a week prior to the incident, he did not believe her based on the strength of the odor of burnt cannabis in her vehicle.

¶ 31     We conclude that the facts of defendant's erratic driving, the strong odor of burnt cannabis in her vehicle, and the presence of cannabis and paraphernalia in her vehicle were sufficient "to lead a reasonably cautious person to believe" defendant was driving while under the influence of cannabis. *Wear*, 229 Ill. 2d at 563.

¶ 32                                CONCLUSION

¶ 33     The judgment of the circuit court of Will County is reversed and the cause is remanded for further proceedings.

¶ 34     Reversed and remanded.

¶ 35     JUSTICE HOLDRIDGE, specially concurring.

¶ 36     I join in the majority's judgment. However, I take issue with the trial court's refusal to consider Trooper Windisch's testimony regarding the results of the "convergence test" that he performed on the defendant. The trial court summarily dismissed Trooper Windisch's testimony on this issue because it was not familiar with any scientific basis for the test. That prevented the court from considering the testimony of an experienced veteran officer, even though the officer described the test and testified that he had learned to apply the test during a training course. If the trial court was concerned about the foundation presented in support of the convergence test, the better practice would have been to conduct a *Frye* (*Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923)) hearing.