**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250400-U

Order filed June 25, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0400 Circuit No. 25-DT-638 |
| WAYNE A. CRUMP II, | ) ) ) | Honorable Colette Safford, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HETTEL delivered the judgment of the court.
Justices Davenport and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1  *Held*: The officer had reasonable grounds to believe defendant was driving while under the influence of alcohol.

¶ 2  The State appeals the Will County circuit court's order granting the petition of defendant, Wayne A. Crump II, to rescind the statutory summary suspension of his driver's license. The State argues the court erred in finding there were no reasonable grounds for the officer to believe defendant was driving while under the influence of alcohol. We reverse.

I. BACKGROUND

¶ 4          On July 6, 2025, defendant was charged with driving while under the influence of alcohol

(DUI) (625 ILCS 5/11-501(a)(2) (West 2024)), improper lane usage (*id.* § 11-709(a)), and failure

to signal while turning (*id.* § 11-804(b)). Defendant was served with a statutory summary

suspension of his driver's license for refusing to submit to chemical testing. He filed a petition to

rescind the suspension, arguing that the officer lacked reasonable grounds to believe defendant

was driving while under the influence. The matter proceeded to a hearing, at which the following

evidence was adduced.

¶ 5          Joliet police officer John Beck testified that on July 6, 2025, at approximately 3 a.m., he

observed a vehicle briefly swerve twice, once with the driver's side tires touching the center

painted median and then crossing the median. Beck observed the vehicle abruptly brake and turn

into the exit lane of a parking lot. In doing so, the vehicle failed to signal before executing a turn

and did not use the turn lane. Instead, the vehicle crossed the median before the turn lane and

signaled as it turned into the exit lane of the parking lot instead of the entrance. Beck effectuated

a traffic stop, and defendant parked his vehicle at an angle and did not pull all the way into the

parking spot. Beck's dash camera footage was admitted into evidence and captured defendant's

infractions and the following observations.

¶ 6          Beck approached the vehicle and spoke with defendant. Upon Beck's approach,

defendant left his window rolled up and was "just staring" at Beck with a newspaper in his lap.

After Beck motioned to roll down the window, defendant complied. Beck immediately observed

a strong odor of an alcoholic beverage emanating from defendant, his eyes were bloodshot and

watery, and his eyelids appeared droopy. When Beck indicated that defendant had been swerving

and failed to signal his turn, defendant responded, "Yeah, the *** damn submarine. I thought

they were still open." Beck understood defendant meant that a fast food store nearby was closed. As defendant spoke, Beck observed his speech was slurred and he had a strong odor of an alcoholic beverage emanating from his breath. Defendant stated he was travelling from Morris, approximately 15 minutes away. Initially, defendant denied consuming alcohol prior to driving but then said he "[a]ctually, came down a lot." Beck asked defendant how much he had to drink, and defendant stated he "couldn't tell" him. Eventually defendant stated that he had consumed two beers at approximately 1 a.m.

¶ 7    Beck observed that defendant fumbled while retrieving his driver's license from his wallet. Defendant indicated that he had proof of his insurance on his cell phone, but he was unable to locate his phone. Beck asked defendant to exit the vehicle and perform standardized field sobriety tests. At this point, defendant's phone was located behind the driver's seat. Defendant agreed that he had no medical issues that would affect his performance on the tests. Once outside the vehicle, Beck continued to observe a strong odor of an alcoholic beverage emanating from defendant's breath. Defendant submitted to the horizontal gaze nystagmus (HGN) test. Beck did not notice defendant sway during the test. Defendant's performance on the test showed six out of six clues, indicating that defendant had consumed alcohol.

¶ 8    Next, Beck began to instruct defendant on the walk and turn test. In doing so, Beck instructed defendant to stand with one foot in front of the other while he demonstrated the test. Defendant was unable to maintain his balance while listening to the instructions. Beck observed defendant break from the stance and "stand casually again," noncompliant with the instructions. After Beck's demonstration, defendant refused to complete the walk and turn and one-leg stand tests or submit to a preliminary breath test. Defendant explained that he felt the "situation was bogus."

3

¶ 9 Beck arrested defendant for DUI based on defendant's swerving while driving, improper lane usage, failure to signal, narrow turn into the exit lane of the parking lot, bloodshot and watery eyes, droopy eyelids, strong odor of an alcoholic beverage emitting from his breath, inconsistent statements regarding his consumption of alcohol, eventual admission to consuming alcohol, performance on the HGN test, inability to maintain balance and listen to instructions of the walk and turn test, and refusal to complete field sobriety tests and a preliminary breath test. Beck detailed his training and experience in detecting impaired drivers, which included completing various courses, certification as a drug recognition expert, a license as a breath analysis operator, and serving as a standardized field sobriety test instructor. Beck opined defendant could not safely operate a motor vehicle.

¶ 10 The State moved for a directed verdict and argued that Beck had probable cause to arrest defendant. The court denied the motion, finding that defendant met his initial burden of a *prima facie* showing for recission and the burden had shifted to the State. The State rested. The court granted the petition to rescind the statutory summary suspension, finding that Beck was credible. The court observed defendant's lane violations as recorded on the dash camera video stating, "I've seen some that are less serious or more serious," and that defendant's admission to consuming alcohol "cancel[ed] out the HGN test." The court noted that defendant was not "swaying," "stumbling," or "falling down," and found that defendant's speech was not "terribly mumbled or slowed or anything of that nature." The court further found, while Beck had a "hunch" that defendant was impaired based on the driving violations, inconsistent statements, and test refusals, that was insufficient to support the finding that Beck had reasonable grounds to arrest defendant for DUI. The State appeals.

¶ 11 II. ANALYSIS

4

¶ 12     On appeal, the State argues that the court erred in finding defendant established a

*prima facie* case and by granting the recission of defendant's statutory summary suspension

where Beck had reasonable grounds to believe defendant was driving while under the influence

of alcohol. Defendant did not file an appellee's brief in this appeal. However, we will proceed

with this appeal as the record is simple and the issue can be easily decided without the aid of an

appellee's brief. See *People v. Kavanaugh*, 2016 IL App (3d) 150806, ¶ 24.

¶ 13     A defendant who receives notice of a summary suspension of his driver's license may

request a hearing to rescind the statutory summary suspension. 625 ILCS 5/2-118.1(b) (West

2024). One of the grounds that may be argued is "[w]hether the officer had reasonable grounds

to believe that the person was driving *** while under the influence." *Id.* The circuit court may

utilize a probable cause analysis in these instances. *People v. Acevedo*, 2017 IL App (3d)

150750, ¶ 17. To determine whether probable cause existed, "the trial court must determine

whether a reasonable and prudent person, having the knowledge possessed by the officer at the

time of the arrest, would believe the defendant committed the offense." *People v. Fortney*, 297

Ill. App. 3d 79, 87 (1998). This standard requires the officer to have more than a mere suspicion

but need not rise to a level of evidence sufficient to convict. *People v. Fonner*, 385 Ill. App. 3d

531, 540 (2008). This determination is a practical, commonsense decision that requires

consideration of the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

¶ 14     "A statutory summary suspension hearing is a civil action where the defendant motorist,

as the petitioner, requests the judicial rescission of a suspension, and the State is placed in the

position of a civil defendant." (Internal quotation marks omitted.) *People v. Araiza*, 2020 IL App

(3d) 170735, ¶ 15. Thus, defendant has the burden of establishing a *prima facie* case for

recission. *Fonner*, 385 Ill. App. 3d at 539. If a *prima facie* case is established, the burden shifts

to the State to justify the suspension. *People v. Helt*, 384 Ill. App. 3d 285, 287 (2008). A reviewing court gives great deference to the circuit court's factual findings and will only reverse if they are against the manifest weight of the evidence. *People v. Wear*, 229 Ill. 2d 545, 561 (2008), *abrogated in part on other grounds by Lange v. California*, 594 U.S. 295 (2021). A finding is against the manifest weight of the evidence where the opposite conclusion is clearly apparent, or its finding is unreasonable, arbitrary, or not based on the evidence. *People v. Sanchez*, 2021 IL App (3d) 170410, ¶ 25. We review *de novo* the ultimate legal ruling on the petition. *Wear*, 229 Ill. 2d at 562.

¶ 15        Here, the evidence established that at approximately 3 a.m., defendant (1) swerved twice, initially touching the center median and then crossing the median; (2) abruptly entered the median and turned without signaling first; (3) executed a turn into the exit lane of the parking lot; (4) had a strong odor of an alcoholic beverage emanating from his breath, that was present both when defendant was inside his vehicle and after he exited; (5) exhibited bloodshot and watery eyes, and droopy eyelids; (6) was unable to maintain the starting position during the walk and turn test; and (7) provided inconsistent statements, and at times, nonresponsive answers regarding his consumption of alcohol. Further, the HGN test confirmed the consumption of alcohol. Additionally, defendant refused to complete the walk and turn, one-leg stand, and preliminary breath tests. See *People v. Day*, 2019 IL App (4th) 160217-B, ¶ 48 (the refusal of field sobriety tests may create a reasonable inference that defendant knew his performance would confirm his impairment).

¶ 16        Taking a commonsense approach, the totality of the circumstances demonstrated that Beck had more than a mere suspicion that defendant committed a DUI, where the evidence of defendant's poor driving and Beck's other observations established numerous indications of

6

impairment. To find otherwise would be unreasonable, arbitrary, and not based on the evidence presented. Based on the record before us, and in the absence of any reason to disregard the evidence presented, we conclude the evidence clearly demonstrated that Beck had reasonable grounds to believe defendant was driving while under the influence of alcohol. Therefore, the court's determination was against the manifest weight of the evidence, and the court erred as a matter of law in granting the recission petition.

¶ 17                                     III. CONCLUSION

¶ 18          The judgment of the circuit court of Will County is reversed.

¶ 19          Reversed.